■ DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT OF THE CITY OF NEW YORK, Respondent-Appellant, v MILL RIVER REALTY, INC., et al., Respondents, 352 CATHEDRAL EQUITIES, INC., et al., Appellants-Respondents, and KENNETH FOO, Respondent-Appellant.—Order, Appellate Term, entered March 29, 1989, which modified an order of the Civil Court, New York County (Lewis R. Friedman, J.), entered June 30,

1988, by vacating so much of the order as directed respondent 352 Cathedral Equities, Inc. to correct a structural violation and perform the work necessary to remove a Department of Buildings vacate order and remitted the matter to the Civil Court for a hearing on the economic feasibility of such repair, unanimously reversed, on the law and the facts, and the order of the Civil Court is reinstated, without costs.

Order, Appellate Term, entered March 29, 1989, which reversed an order and judgment (one paper) of the Civil Court, New York County (Lewis R. Friedman, J.), entered August 30, 1988, which found respondents 352 Cathedral Equities, Inc. and Reza Nabavi guilty of criminal contempt, imposed a $250 fine upon 352 Cathedral Equities, Inc. and sentenced Reza Nabavi to a jail term of 15 days, unanimously reversed, on the law and the facts, and the order and judgment (one paper) of the Civil Court is reinstated, without costs.

Petitioner, the New York City Department of Housing Preservation and Development (HPD), commenced the underlying proceeding for a judgment directing the appointment of an RPAPL article 7-A administrator to collect rents and to apply such rents for the purpose of remedying conditions in a multiple dwelling located at 350-352 & 354 West 110th Street. It was alleged that the conditions existing at the premises were dangerous to the life, health and safety of the tenants of the 101 dwelling units and that such conditions had existed for more than five years in violation of the Multiple Dwelling Law and the Housing Maintenance Code.

By order dated December 9, 1980, Housing Court Judge Harriet George appointed Morris Yodowitz administrator of the buildings which had hundreds of Building Code violations. Respondent Mill River Realty, Inc. was the owner of 350 and 352 West 110th Street at this time and respondent Leon Austern was the managing agent. In 1981, the Buildings Department issued a violation to correct cracked and loose brickwork on the front entrance of 352 West 110th Street.

Yodowitz was thereafter discharged from his responsibilities on January 5, 1982 and R.C. Lawrence was appointed to succeed him. This appointment was limited to the buildings located at 350 and 352 West 110th Street. On September 6, 1983, a partnership named Valley Company purchased 350 and 352 West 110th Street from Mill River Realty, Inc. Lawrence agreed to allow Valley Company to keep the vacant apartments empty and the company agreed to pay the rent for these apartments. By order dated September 24, 1984, Judge

George granted Valley Company's unopposed motion to permit the article 7-A administrator to rent any vacant apartments in the building to Valley Company.

The rent roll of the building, even with the payments for the vacant apartments, barely covered operating expenses. The administrator then brought a nonpayment proceeding against a tenant and after the tenant counterclaimed, sought to join Valley Company as a third-party respondent. The administrator had also received a Criminal Court summons for building violations and sought directions or instructions from the court. HPD moved to require Valley Company to correct the violations. Judge Friedman, in his decision dated February 13, 1986 and order entered August 1, 1986, granted the motion to add Valley Company as a third-party respondent in the nonpayment action and granted the motions by the administrator and HPD to the extent that a hearing was ordered to determine whether the administrator or the owner should correct the building violations. Respondent 352 Cathedral Equities, Inc. was joined as a party to the action since Valley Company had transferred title to the building to his company on November 6, 1985. On March 17, 1986, Judge Friedman refused to relieve Valley Company from the lawsuit.

On December 2, 1986, Judge Friedman directed 352 Cathedral Equities, Inc. to correct the violations in the buildings within 30 days after receipt of notice of entry of the order. The order further provided that in the event that it would be impossible to correct the violations within the stated time frame, 352 Cathedral Equities, Inc. was to submit a plan for correction of the violations for the court's approval within the 30 days.

Lawrence was removed as administrator on December 12, 1986 and Kenneth Foo was appointed to replace him. The Buildings Department then brought criminal charges against Foo for failing to make the repairs to the building. The chief executive officer and principal stockholder of 352 Cathedral Equities, Inc., Reza Nabavi, thereafter sought permission to manage the 350 West 110th Street property in place of Foo who had submitted his resignation. This was the property which had the least structural damage. On March 10, 1988, Judge Friedman granted the motion to remove Foo as administrator and granted Nabavi's motion to restore the management and control of the building to the owner on the condition that the owner remove all violations from the building and assume responsibility for both buildings. On June 16,

1988, the Buildings Department and the Fire Department issued vacate orders for 352 West 110th Street based on the structural crack which was expanding in an exterior wall of the building.

On June 20, 1988, the tenants brought an order to show cause seeking to hold 352 Cathedral Equities, Inc. and its president Nabavi in criminal contempt for failing to comply with the court's December 2, 1986 order. HPD joined in the application.

In his order of June 30, 1988, Judge Friedman removed Foo as the administrator of both buildings and directed the owner to correct all class A building violations within 10 days, class B violations within 60 days and class C violations within 120 days. The owner was also directed to submit a plan to the court and the other parties within 20 days for correcting the outstanding 1981 structural violation at 352 West 110th Street and to immediately perform the work necessary to remove the vacate order issued by the Fire Department and the Department of Buildings.

352 Cathedral Equities, Inc. and Nabavi then sought reargument and/or renewal of Judge Friedman's June 30, 1988 order on the ground that the owner was not given the opportunity to be heard on the issue of the economic feasibility of restoring the premises and removing all outstanding violations. They also sought an order tolling, staying or enlarging the time provided in the court's June 30, 1988 order for removal of violations at the premises, vacating that portion of the order which directed the owner to remove violations and to immediately perform the repairs, and consolidation of these issues with a proceeding initiated by a tenant to correct violations. In a decision dated August 11, 1988, Judge Friedman denied the motion for reargument or renewal and further held that Mill River Realty was collaterally estopped from raising the issue of economic feasibility since this issue could have been litigated in the 1986 proceedings.

After HPD and the tenants moved to hold 352 Cathedral Equities, Inc. and Reza Nabavi in criminal contempt for violating Judge Friedman's December 2, 1986 order, a hearing was held on August 8, 1988 at which time tenants of the building testified that Nabavi had informed them that he wanted the tenants to vacate before he repaired the building. No testimony was introduced on behalf of the owner. On August 10, 1988, Judge Friedman found the company and Nabavi guilty of criminal contempt. He fined the company $250 and sentenced Nabavi to 15 days in jail.

Appellate Term modified Judge Friedman's June 30, 1988 order by vacating so much of the order as directed the landlord to correct the structural violation and perform the work necessary to remove the June 16, 1988 Department of Buildings vacate order and remitted the matter to the Civil Court for a hearing on the economic feasibility of making such repairs. In a subsequent order entered March 29, 1989, Appellate Term reversed the finding of criminal contempt and vacated the penalties imposed. The court found that Judge Friedman's June 30, 1988 order extended the owner's time to submit a plan for the correction of the structural violation to July 20, 1988 and that this order therefore superseded the December 2, 1986 order which formed the basis for the finding of contempt. The court further concluded that the record failed to support a finding of a willful violation of the December 2, 1986 order.

It was error for Appellate Term to remit the matter for a hearing on the issue of the economic feasibility of repairing the building. It is evident from the record that any alleged economic hardship the owner may suffer in making the repairs to the building is self-inflicted in light of its delay in making the repairs despite repeated notice of the need for such repairs as evidenced by the outstanding violations issued against the building, court orders issued over a 10-year period of time and particularly since the structural crack is visible to the eye *(Eyedent v Vickers Mgt.,* 150 AD2d 202). While the owner claims that it was entitled to a hearing on the issue of economic feasibility since such hearing was held in *Eyedent,* the owner never raised this issue until after the Buildings Department issued a vacate order and until after the Civil Court conditioned removal of the article 7-A administrator on compliance with its earlier order directing the owner to make the repairs. The owner never appealed the December 2, 1986 order and first sought to raise the issue in a motion to reargue or renew the Civil Court's June 30, 1988 order. The Civil Court properly determined that the owner was collaterally estopped from raising the issue.

It was also error for Appellate Term to reverse the finding of criminal contempt and to vacate the penalties imposed. Contrary to the conclusion reached by Appellate Term, the Civil Court's June 30, 1988 order did not supersede its December 2, 1986 order by extending the owner's time for compliance until July 20, 1988. The June 30, 1988 order directing the owner to repair the building merely reinforced its December 2, 1986 order which the owner had disobeyed. In any

event, criminal contempt is generally imposed to preserve the power and vindicate the dignity of the court *(State of New York v Congress of Racial Equality,* 92 AD2d 815, 816). Obedience to a lawful order of the court is required even if the order is thereafter held "erroneous or improvidently made or granted by the court under misapprehension or mistake. *(Ketchum v Edwards,* 153 NY 534 * * *; *Baksi v Wallman,* 272 App Div 752.)" *(Supra,* at 817.)

Despite the delay in commencing the contempt proceeding and contrary to the conclusion reached by Appellate Term, the record fully supports a finding that the owner willfully disobeyed the December 2, 1986 order. Although the owner contends that a January 7, 1987 letter from its attorney complied with the December 2, 1986 directive to submit a plan for correction of the violations, the letter clearly did not constitute the plan contemplated by the court's order. As Judge Friedman noted, the letter submitted on behalf of the owner was merely a plea to vacate the building so that a plan could be formulated after the tenants were removed. The court further ordered the owner to submit the plan for the court's approval but no motion was ever made for court approval of a plan. The contempt finding was further supported by the testimony of the tenants and by the fact that even after the tenants vacated the premises, the owner still refused to make the necessary repairs. Finally, the Civil Court did not abuse its discretion in sentencing Nabavi to 15 days in jail.

We have considered the owner's remaining contentions and find them to be without merit. Concur—Kupferman, J. P., Sullivan, Milonas, Rosenberger and Kassal, JJ.