Kristin Booth Glen, J.
(concurring). While I join in the result set forth in the Per Curiam opinion, I would find as a matter of law that Housing Court lacks subject matter jurisdiction over this summary proceeding because petitioner City of New York (the City) has failed to state a cause of action.
As a governmental entity, the City may not terminate the tenancies of tenants in in rem buildings without cause (512 E. 11th St. HDFC v Grimmet, 181 AD2d 488 [1st Dept 1992]; 157 W. 123rd St. Tenants’ Assn. v Hickson, 142 Misc 2d 984 [App Term, 1st Dept 1989]). The issue is whether the mere placement by the Department of Housing Preservation and Development (DHPD) of a vacate order on an in rem building which it manages constitutes the "cause” required to terminate a tenancy as a matter of law.
The Appellate Division, First Department, has held that vacate orders do not terminate tenancies, stating: "Even though the instant premises have been evacuated, pursuant to vacate orders which were issued to protect the public safety, we find that those vacate orders did not terminate the petitioners’ tenancies (Matter of Department of Bldgs. [Philco Realty Corp.], 14 NY2d 291, 302, n 2 [1964]; Garber v Egger, 132 NYS2d 371 [App Term, 1st Dept 1954]).” (Eyedent v Vickers Mgt., 150 AD2d 202, 204 [1st Dept 1989].) In Eyedent, the Court reinstated a Housing Court determination, made on the motion of out of possession tenants, directing the landlords to correct violations after the Department of Buildings had issued a vacate order and DHPD had issued repair/vacate orders. In Department of Hous. Preservation & Dev. v Mill Riv. Realty (169 AD2d 665 [1st Dept 1991]), the First Depart *1040 ment again upheld a Housing Court order requiring the landlord to repair after vacate orders have been placed and the tenants had left their apartments.
The City relies on Administrative Code of the City of New York § 26-301 (1) (e) as the basis for its termination notices, distinguishing the vacate orders it places on in rem buildings from those placed on privately owned buildings. Yet this reliance is misplaced, as the Appellate Division, First Department, held in Lacks v City of New York (201 AD2d 309, 311 [1st Dept 1994]): "[T]he City, in its capacity as owner of in rem residential buildings, is bound by Multiple Dwelling Law § 78 and Housing Maintenance Code § 27-2005, which direct all 'owners’ of residential dwellings to keep their premises in 'good repair’, and that if repair work is economically feasible, no exemption from the mandates of these statutes can be implied from the City’s authority to issue a vacate order when a building is unsafe * * * There is no merit to the City’s argument that [section] 26-301 (1) (e) grants it blanket, unfettered discretion to issue vacate orders terminating all statutory obligations to keep its in rem buildings in good repair.” As in Eyedent (supra) and Mill Riv. (supra), Lacks requires the landlord, here the City, to repair even after a vacate order has been placed on its in rem building. There would be no point to requiring the City to repair even after the tenants are out of physical possession unless the tenants retain legal possession and the continuing right to resume physical possession once the conditions which triggered the evacuation of the building are corrected, or a court determines it is not economically feasible to repair them.
In addition, Administrative Code § 26-301 (1) (e), which gives the Commissioner of DHPD the power and duty to order occupants of in rem buildings to vacate when building conditions "endanger the life, health or safety of the occupants,” contains no language authorizing termination of tenancies when vacate orders are placed. Thus, as a matter of law, the placement by DHPD of a vacate order on an in rem building cannot constitute the "cause” required to terminate the tenancies in the building. Absent such termination, the Housing Court has no subject matter jurisdiction to hear the holdover proceeding.
A review of the general statutory scheme for vacate orders, set forth in the Housing Maintenance Code (Administrative Code § 27-2001 et seq.), supports this interpretation. Section 27-2139 et seq. of the Administrative Code provides the autho *1041 rization and procedure to order a dwelling vacated. Section 27-2139 provides the standard for ordering vacatur: "a. Any dwelling or part thereof, which, because of a structural or fire safety hazard, defects in plumbing, sewage, drainage, or cleanliness, or any other violation of this code or any other applicable law, constitutes a danger to the life, health, or safety of its occupants, shall be deemed to be unfit for human habitation.”
Any New York City department charged with enforcement of the Housing Maintenance Code has authority to order a building vacated. (Administrative Code § 27-2139 [b]; § 27-2004.) Among them are the Department of Buildings (Administrative Code § 26-127 [b]), the Fire Department (see, e.g., Department of Hous. Preservation & Dev. v Mill Riv. Realty, supra, at 668) and DHPD (NY City Charter § 1802). Vacate orders must set forth, with specificity, the conditions which render the building uninhabitable (Administrative Code § 27-2140), and the landlord must correct conditions in no more than 10 days (Administrative Code § 27-2140 [c] [1]). The vacate order may be revoked once the conditions are corrected or while they are being corrected, and the time for compliance with the orders may be extended (Administrative Code § 27-2142 [b]). Landlords can be required to make reasonable efforts to notify tenants who have vacated pursuant to a vacate order that they have a right to reoccupy (Administrative Code § 27-2142 [d]).
When read in the context of these more general provisions about vacate orders, the purpose of section 26-301 becomes clear. DHPD required statutory authority and procedures for determining when and how to place vacate orders on buildings for which it functions as both landlord and an enforcing agency under the Housing Maintenance Code. Section 26-301 provides safeguards in requiring inspections by two qualified DHPD employees and acceptance of the report by the Commissioner herself before a vacate order may be placed on its own in rem building. In addition, the relocation provisions are in keeping with a government’s responsibility for housing tenants who are deprived of shelter. (See generally, Administrative Code § 26-301 et seq. ["Relocation Services”].)
In the absence of a requirement that DHPD secure a warrant of eviction in Housing Court prior to removing tenants, there remains an issue of how tenants are to be removed in the case of immediate danger. Where immediate evacuation is required for the safety of tenants, the Department of Buildings, the Fire Department and other governmental enti *1042 ties have the police power to remove them by securing the assistance of the Police Department. Such evacuations do not terminate the tenancies. Misuse of such police powers to empty buildings for purposes other than safeguarding the immediate safety and health of tenants would potentially subject the agency to claims of unlawful eviction (see, RPAPL 853).
Of course, since DHPD wears two hats, as landlord and regulator, the potential for exceeding its power is much greater than for other agencies. Further, the economic constraints which are operative in the case of private landlords are inapplicable to DHPD. For example, a vacate order on a private dwelling requires repair of the building or the risk of loss of rents if the order is not complied with and the tenants are evacuated. Where, as here, DHPD has placed a vacate order on itself, it is questionable whether the purpose is to force itself to repair the buildings or be threatened with loss of the rent roll. In an analogous context, which raised similar concerns about unfettered power, the Second Circuit Court of Appeals observed, "It hardly need be said that the existence of an absolute and uncontrolled discretion in an agency of government vested with the administration of a vast program, such as public housing, would be an intolerable invitation to abuse.” (Holmes v New York City Hous. Auth., 398 F2d 262, 265 [2d Cir 1968].) To avoid the possibility of such abuse, DHPD must limit its use of its evacuation police powers only to those situations where it would be appropriate to evacuate a privately owned building for the safety of the tenants.
In conclusion, where immediate evacuation is necessary to protect life, limb, or health, DHPD has the police power to evacuate a building, but such evacuation does not terminate its tenancies. DHPD has no authority to terminate tenancies in its in rem buildings in lieu of repairing them or to shortcut the process necessary to secure a court order relieving it of that responsibility.
In the alternative, assuming, arguendo, that a higher court were to determine that Housing Court has jurisdiction, I join in the Per Curiam decision. In addition to the discussion there, I also note several practical problems in requiring tenants of in rem buildings to commence article 78 proceedings whenever their tenancies are threatened. If, as the dissent argues, an article 78 proceeding is the only avenue for challenging vacate orders, Supreme Court would become the initial forum in which the most vulnerable of tenants, lacking *1043 access to administrative review, and challenging inadequate, vague notices, would be heard. Vague notices and the lack of a record developed at the administrative level would require discovery, hearings and other court interventions not routinely employed in article 78 proceedings. Supreme Court would hardly welcome its transformation into a landlord-tenant court for in rem housing, especially when Housing Court exists precisely for this purpose.
The burden on Supreme Court may not materialize, however, because most in rem tenants are low income, lack education and a substantial number do not speak English. To expect that they will be aware of article 78 with no notice from DHPD, and that, in order to have a forum, they will effectively commence affirmative litigation against DHPD in Supreme Court is incredible, and renders access to the courts —and the due process to which those tenants are entitled— entirely illusory.