LUPIANO, CAPOZZOLI, LANE and MARKEWICH, JJ., concur.

Judgment, Supreme Court, New York County, entered on February 25, 1976, unanimously reversed, on the law, and vacated, the application denied, the cross motion granted and the petition dismissed. Respondent-appellant shall recover of petitioner-respondent $40 costs and disbursements of this appeal.

STATE OF NEW YORK, Respondent, v UNIQUE IDEAS, INC., et al., Appellants.

First Department, March 3, 1977

*H. Miles Jaffe* of counsel *(Grier H. Raggio, Jr.,* with him on the brief; *Norwick, Raggio, Jaffe & Kayser,* attorneys), for appellants.

*Earl Roberts* of counsel *(Samuel A. Hirshowitz* and *Daniel M. Cohen* with him on the brief; *Louis J. Lefkowitz, Attorney-General),* for respondent.

KUPFERMAN, J. The defendant Unique Ideas, Inc. and one Ernie Tucker, its principal, operated a so-called "get-rich-quick" scheme, offering for sale to the public a work-at-home sales system described in a booklet selling for $10. Customers were secured by direct mail and by advertisements in national magazines. The defendants also sold mailing and reply envelopes and advertising insertions that offered for sale ornamental mink novelty items. Mailing lists (usually stale) were supplied for solicitation.

The defendants have conceded that they had approximately 50,000 agents and prospective agents who purchased the money-making plan and materials. These agents would write, among others, to those on the mailing lists provided, and in the event they obtained an order for a novelty item, the agent would send the order to Unique Ideas, Inc. for completion, retaining 50% of the money received and remitting the balance to Unique Ideas, Inc. The minimum price that the agents paid the defendants for the mailing materials, etc. was $53, going up to several hundred dollars, depending on the quantity purchased. There were many agents compared to the

number of ultimate customers, and so, in a sense, the medium was the message.

The Attorney-General of the State of New York initiated a proceeding in 1974, pursuant to article 22-A of the General Business Law, to enjoin the defendants from deceptive unlawful acts (see *People v Volkswagen,* 47 AD2d 868), and a final consent judgment was entered into (FINE, J.) in December of 1974, which provided, among other things, as follows:

"ORDERED, ADJUDGED AND DECREED that Unique Ideas, Inc. its officers and agents and Ernie Tucker be and they hereby are enjoined, restrained and prohibited from misrepresenting directly or indirectly in connection with the offer for sale or sale of their 'proven easy money-making method' that:

"a) consumer purchasers of the plan can make a fortune of money through its use.

"b) the plan is a proven money-making method.

"c) the money-making capacity of the plan has been certified, notarized and documented.

"d) consumer purchasers of the plan are supplied with the names and addresses of 'guaranteed' mail order buyers.

'e) Unique Ideas, Inc. is the sole manufacturer of 'Mink Show Offs' gift items.

"f) a ten percent sales order response can be expected from the mailing solicitation for 'Mink Show Offs' gift items.

"g) Ernie Tucker made $35,000.00 in just one day at home in bed with the flu through use of the plan."

The defendants appeal from an order of the Supreme Court, New York County (STARKE, J.) entered July 31, 1975, denying a motion to vacate the said final consent judgment entered December 26, 1974, and we affirm.

The defendants contend that the consent judgment was ambiguous, that they were enjoined from "misrepresenting" and not from "representing", and, therefore, the statements contained in the new materials which they thereafter mailed, must be proven to be false. It is not disputed that they sent virtually identical soliciting material after the consent judgment, totaling some 2-1/2 million items, and received at least several thousand replies for servicing.

Of course, to be guilty of contempt, the mandate of the court must be clear. *(Ketchum v Edwards,* 153 NY 534.) If the facts are in dispute, a hearing should be held. *(Matter of McDonnell v Frawley,* 23 AD2d 729.) However, in this situa-

tion, to accept the contention of the defendants would make meaningless the consent judgment entered into.

The defendants further appeal from the determination holding them in contempt as to which the issue is an interpretation of section 773 of the Judiciary Law[1] insofar as it applies to the order and judgment of the Supreme Court, New York County (STARKE, J.) entered December 23, 1975. This decree granted the plaintiff's motion to hold the defendants in contempt and adjudged that they were guilty of 2,438,698 contempts of court based on the separate soliciting letters mailed by them in violation of the final consent judgment, and determined that the defendants had received at least $209,000 on deposit in a bank, which sum represents only a part of the amount of which customers (agents and prospective agents) were defrauded, and imposed a fine of $500,000,[2] and suspended the amount of fine over $209,000 on condition of future compliance with the consent judgment. The said judgment set forth a procedure for the Attorney-General to take certain steps to seek out the defrauded customers and to investigate the claims filed, and to pay valid claims to those defrauded customers on a pro rata basis, and further adjudged that any excess after restitution be paid to the State in partial payment of the fine imposed.

Initially, we are met with the fact that the amount impounded was in the account of a nonparty corporation, Nature's Eve, Inc. However, it is clear that Nature's Eve, Inc., which was also a creature of the codefendant Ernie Tucker, had its funds, commingled with Unique Ideas, Inc., and that funds in excess of $209,000 belonging to Unique Ideas, Inc. were transferred to the account of Nature's Eve, Inc., and so we reject the defendants' contention.

---

1. "§ 773. Amount of fine. If an actual loss or injury has been produced to a party to an action or special proceeding, by reason of the misconduct proved against the offender, and the case is not one where it is specially prescribed by law, that an action may be maintained to recover damages for the loss or injury, a fine, sufficient to indemnify the aggrieved party, must be imposed upon the offender, and collected, and paid over to the aggrieved party, under the direction of the court. The payment and acceptance of such a fine constitute a bar to an action by the aggrieved party, to recover damages for the loss or injury. Where it is not shown that such an actual loss or injury has been produced, a fine must be imposed, not exceeding the amount of the complainant's costs and expenses, and two hundred and fifty dollars in addition thereto, and must be collected and paid, in like manner. A corporation may be fined as prescribed in this section."

2. Based on the number of contempts multiplied by $250, but reduced to the amount set forth.

Next we have the defendants' contention that the order is invalid in providing that any payment made in restitution shall not limit other rights of the customer against the defendants except to the extent that any amount received shall be a setoff against any additional or further claim. This point is well taken under the language of section 773, which provides that acceptance of payment shall be a bar to any action by the party aggrieved. However, the original stipulation of the final consent judgment reserved the right for the "purchaser of any mailing materials to seek or obtain full restitution from defendants." Thus, the order merely carries out the stipulation, and we so construe it.

Accordingly, we find that the Attorney-General is authorized to retain the $209,000 in an interest-bearing account, and to distribute to claimants, whose claims are properly established, the money mulcted from them pro rata, and that the State's expenses of investigation, notification and hearings, etc. should be borne by the fund. When this is completed, the remainder would be available for the fine imposed by the court, being $250 multiplied by the number of contempts properly found under section 773 of the Judiciary Law. (See *Geller v Flamount Realty Corp.,* 260 NY 346; *Socialistic Co-op Pub. Assn. v Kuhn,* 164 NY 473; *Moffat v Herman,* 116 NY 131.)

Although the number of letters mailed after the entry of the final consent judgment, as hereinbefore set forth, were several million, there were only four bulk mailings, which, if that is the standard as four separate acts of contempt, would amount to a fine of $1,000. There were several thousand replies from customers (agents and potential agents) and servicing thereof by the defendants, and if each of these were held to be a contempt, the fine could encompass the amount, at $250 each, of at least the $500,000 adjudged at Special Term and suspended as to that portion thereof over $209,000 to the extent that there was compliance in the future with the consent judgment.

This court holds that there are only four contempts, and that the fine is $1,000. Speaking for myself alone, I would consider each separate reply and the servicing thereof, of several thousand, to be a separate[3] contempt, and therefore as to that aspect, would affirm the judgment at Special Term.

---

**3.** Cf. *Westermann Co. v Dispatch Co.,* 249 US 100; *Burndy Eng. Co. v Sheldon Serv. Corp.,* 127 F2d 661 (copyright infringement); *Gregoire v Putnam's Sons,* 298 NY 119; *Fried, Mendelson & Co. v Halstead, Ltd.,* 203 App Div 113; *Zuck v Interstate Pub.*

The order of July 31, 1975 (STARKE, J.) denying vacation of the final consent judgment should be unanimously affirmed, with costs. The final order and judgment of contempt of December 23, 1975 should be modified on the law to limit the number of contempts to four, to strike the provisions for escheat to the State of the excess over the amount necesary for reimbursement and expenses in connection therewith, and to authorize and direct the Attorney-General to retain the $209,000 in an interest-bearing account from which there shall be deducted the amounts paid or payable as reimbursement and expenses in connection therewith, and a fine of $1,000, and the said fine should be reduced from $500,000 to the amount necessary for reimbursement pro rata and expenses plus $1,000, and a final accounting directed to be made by the Attorney-General to Special Term, and the order and judgment of contempt should otherwise be affirmed, without costs and without disbursements.

STEVENS, P. J., MARKEWICH and YESAWICH, JJ., concur in opinion by KUPFERMAN, J.; KUPFERMAN, J., dissents in part and would affirm the judgment below with respect to number of contempts.

Order, Supreme Court, New York County, entered on July 31, 1975, unanimously affirmed. Respondent shall recover of appellants $40 costs and disbursements of this appeal.

Judgment of said court, entered on December 23, 1975, modified, on the law, to limit the number of contempts to four, to strike the provisions for escheat to the State of the excess over the amount necessary for reimbursement and expenses in connection therewith, and to authorize and direct the Attorney-General to retain the $209,000 in an interest-bearing account from which there shall be deducted the amounts paid or payable as reimbursement and expenses in connection therewith, and a fine of $1000, and the said fine reduced from $500,000 to the amount necessary for reimbursement and expenses plus $1,000, and a final accounting directed to be made by the Attorney-General to Special Term, and otherwise affirmed, without costs and without disbursements.

*Corp.,* 317 F2d 727 (defamation); *United States v Eskow,* 422 F2d 1060, cert den 398 US 959 (mail fraud).