[620 NYS2d 837]

In the Matter of DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT OF THE CITY OF NEW YORK, Appellant-Respondent, v DEKA REALTY CORP., Respondent-Appellant, et al., Respondents.

Second Department, January 9, 1995

38

### APPEARANCES OF COUNSEL

*Paul A. Crotty, Corporation Counsel* of New York City *(Leonard Koerner, Ronald E. Sternberg, Janessa C. Nisley* and *Jerald Horowitz* of counsel), for appellant-respondent.

*Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria,* New York City *(Herald Price Fahringer* and *Diarmuid White* of counsel), for respondent-appellant.

### OPINION OF THE COURT

GOLDSTEIN, J.

Several issues concerning the imposition of contempt sanctions and civil penalties are raised on this appeal: (1) whether civil contempt fines, assessed for a landlord's failure to remedy certain housing code violations on its premises, should properly be distributed to the Department of Housing Preservation and Development of the City of New York or to those tenants aggrieved by the existing violations; (2) whether contempt fines may be assessed, pursuant to a consent decree, based on a multiplication of individual housing code violations times

the maximum statutory fine; (3) whether, and under what circumstances, the imposition of contempt fines and/or civil penalties may trigger a constitutional right to a jury trial; and (4) whether the requirement of a written waiver of the right to trial by jury under article I (§ 2) of the New York Constitution applies to a civil action in which punitive sanctions are imposed.

Appellant Deka Realty Corp. (hereinafter Deka) is the owner of a six-story, 133-unit, multiple dwelling, and was cited by the respondent Department of Housing Preservation and Development of the City of New York (hereinafter HPD) for numerous housing code violations. HPD commenced an enforcement proceeding seeking to compel Deka and its agents, Jesus Cortes and Anthony Kambouris, to cure all outstanding violations at the subject premises. The parties entered into a consent decree wherein Deka and its agents agreed to make the necessary repairs by certain fixed dates. The consent order also provided, *inter alia,* that each housing code violation which Deka was required to cure would be treated as the subject of a separate order of the court. Thus, for each day that Deka violated these discrete orders by not having made the necessary repairs, it was deemed to have committed a separate and distinct contempt of court. The time within which Deka was permitted to correct these violations was thereafter extended in a subsequent consent order. When Deka and its agents failed to comply with the subsequent order, HPD moved for an order assessing civil penalties and further sought to punish Deka and its agents for civil and criminal contempt.

Following a nonjury trial, Deka and its agents were adjudicated to be in civil and criminal contempt and, pursuant to the terms of the consent decree, fines were imposed for each day that each violation went uncorrected, for a total of $3,372,250 in criminal contempt fines, and $3,372,250 in civil contempt fines. Deka and its agents were also assessed $272,645 in civil penalties.

The Appellate Term reduced the criminal contempt fines to $1,000, and vacated the findings of civil contempt, fines, and civil penalties, remitting the matter to the Civil Court of the City of New York, Queens County, for a jury trial on those issues. With regard to the civil contempt sanction, the findings were vacated because the Civil Court failed to consider the tenants' actual damages. The Appellate Term further held that Deka was entitled to a jury trial on the civil contempt

findings since the amount of the fine could easily exceed $100,000 in actual damages. With respect to the civil penalties, the findings were vacated to address Deka's claim that 27 violations were improperly considered by the Civil Court when it assessed those penalties.

Liability against Deka and its agents has clearly been established on this record (Department of Hous. Preservation & Dev. v Mill Riv. Realty, 169 AD2d 665, affd 82 NY2d 794; Gregori v Ace 318 Corp., 134 Misc 2d 871, mod on other grounds 142 Misc 2d 1028). We agree with the Appellate Term, however, that the multiple contempt fines imposed were neither authorized nor appropriate under the Judiciary Law.

HPD has withdrawn from consideration its argument that it is entitled to collect both per diem civil and criminal contempt fines, and it has decided to forego reliance upon any of the 27 disputed violations in connection with the fines for civil and criminal contempt.[1] HPD maintains, however, that the Civil Court correctly assessed the contempt fines in accordance with the number of individual violations existing on the subject premises. HPD argues that the Appellate Term erroneously rejected the Civil Court's reliance upon, and implementation of, the consent orders entered into by the parties. The orders specifically provided that "each violation * * * ordered to be corrected constitutes * * * a separate and distinct Order of this Court". According to HPD, the parties intended that each failure to complete a required repair constituted a separate and distinct contempt of a separate and distinct order. While not disputing this interpretation, the Appellate Term concluded that enforcement of the order, as so interpreted, would confer upon the courts subject matter jurisdiction which they do not possess.

HPD maintains that the Appellate Term's analysis is erroneous in that the consent order constituted nothing more than the parties' attempts to seek a nonjudicial resolution of the enforcement proceeding. According to HPD, the signing of the consent orders was voluntary and calculated, with each party determining that its best interests would be served by so terminating the litigation. Pursuant to the consent order, Deka agreed to cure the outstanding violations and thereby

---

1. HPD also stated that, for the purpose of imposing contempt fines but not civil penalties, the per apartment heat and hot water violations would each be considered a single violation.

avoid the substantial penalties which had accrued. HPD relinquished its rights to seek those penalties in exchange for Deka's agreement to make all repairs by a date certain, and Deka's further acknowledgement that each failure to correct a violation would represent a separate offense for which the sanction of contempt could be imposed. According to HPD, the consent decree was no different than any other binding stipulation—a contract between parties which, unless unreasonable or violative of public policy, is worthy of enforcement. HPD maintains that in executing the consent orders, the parties simply "placed their own gloss" on the statutory words " 'a [criminal] contempt' ", and that the law has traditionally acquiesced in the right of parties to so order their affairs.

There now exist 53 uncorrected violations which HPD contends constitute 53 separate contempts of court. HPD contends that, pursuant to the consent decree, a fine of $13,250 should be imposed for civil contempt which amount represents the maximum statutory fine of $250 (see, Judiciary Law § 773) multiplied by the 53 violations, and a fine of $53,000 should be imposed for criminal contempt, representing the maximum statutory fine of $1,000 (see, Judiciary Law § 751) multiplied by the 53 violations.

■ We find that HPD's analysis is neither authorized nor appropriate concerning the imposition of civil contempt or criminal contempt sanctions, and we therefore decline to adopt their position. A stipulation entered into between parties is incapable of expanding a court's power to impose punishments for civil and criminal contempt pursuant to the provisions of Judiciary Law §§ 753 and 750, respectively. "[T]he two types of contempt serve separate and distinct purposes" (Matter of Department of Envtl. Protection v Department of Envtl. Conservation, 70 NY2d 233, 239). Civil contempt seeks vindication for individuals who have been injured or "harmed by [a] contemnor's failure to obey a court order" (Matter of Department of Envtl. Protection v Department of Envtl. Conservation, supra, at 239). A civil contempt penalty is imposed "not to punish but, rather, to compensate the injured private party or to coerce compliance with the court's mandate" (Matter of Department of Envtl. Protection v Department of Envtl. Conservation, supra, at 239). Criminal contempt, on the other hand, involves vindication of an offense against judicial authority and is utilized to protect the integrity and dignity of the judicial process and to compel respect for its mandates (see, King v Barnes, 113 NY 476).

The rather simplistic formula for contempt sanctions proposed by HPD, to wit, multiplying the number of individual housing violations by the maximum statutory fine, fails to serve either the goals and purposes underlying a criminal contempt or those of a civil contempt.

Insofar as civil contempt is concerned, the purpose of a fine is to compensate. The fines that may be imposed for a civil contempt are found in Judiciary Law § 773. The statute provides for two types of awards: one where actual damage has resulted from the contemptuous act in which case an award sufficient to indemnify the aggrieved party is imposed, and one where the complainant's rights have been prejudiced but an actual loss or injury is incapable of being established. In that situation, the fine is limited to $250, plus the complainant's costs and expenses (Judiciary Law § 773, as amended by L 1977, ch 437, § 8).

"In either case, unlike fines for criminal contempt where deterrence is the aim and the State is the aggrieved party entitled to the award (e.g., *Matter of Katz v Murtagh*, 28 NY2d 234; cf. *Nye v United States*, 313 US 33, 42-43), civil contempt fines must be remedial in nature and effect *(Gompers v Bucks Stove & Range Co.*, 221 US 418). The award should be formulated not to punish an offender, but solely to compensate or indemnify private complainants" *(State of New York v Unique Ideas*, 44 NY2d 345, 349).

In *State of New York v Unique Ideas (supra)*, a consumer fraud action was brought by the Attorney-General and a consent judgment was entered against the defendants. The terms of the judgment were violated when the defendants waited less than a month before offering the same " 'get rich quick' " scheme condemned in the consent judgment to some 2,500,000 potential new customers through the use of four bulk mailings *(State of New York v Unique Ideas, supra*, at 347). The Attorney-General sought to impose a civil contempt fine of $250 for each of the 2,500,000 postjudgment mailings. The trial court found this fine to be theoretically within its powers, but in its discretion imposed a fine of $500,000. The Appellate Division, First Department, concluded that the maximum fine that could be imposed was $250 for each of the four bulk mailings (56 AD2d 295). The Court of Appeals rejected the constructions of both the lower court and the Appellate Division, finding that a contempt award arrived at by multiplying $250 by either the 2,500,000 individual offerings, or by

the four bulk mailings, was improper. The Court indicated that where there is an actual loss or injury, Judiciary Law § 773 did not provide for a general $250 fine, single or multiple. The Court stated that, in keeping with its compensatory policy, the statute called rather for an assessment that would indemnify the aggrieved parties—the defrauded consumers themselves. The Court held that since the consumers had suffered actual losses, "any civil fine based on separate acts of contempt multiplied by the statutory maximum for unprovable damages would be inappropriate" *(State of New York v Unique Ideas, supra,* at 350). The Court went on to state that "[e]ven if we were dealing with a case of mere prejudice rather than actual injury, that construction would be no less problematic, for it could be indiscriminately applied to achieve 'extortion beyond the requirements of just compensation or indemnity, and to reward the omission of exact proof by multiplying the maximum award by the number of the offenders' or divisible offenses *(Socialistic Co-op. Pub. Assn. v Kuhn,* 164 NY 473, 476 * * *)" *(State of New York v Unique Ideas, supra,* at 350; *see also, Page v Cheung On Mansion,* 138 AD2d 324, 325).

It is precisely for these reasons that the multiple $250 fines suggested by HPD must be rejected. In this case, as in *State of New York v Unique Ideas (supra),* the aggrieved parties have suffered actual damages and, thus, any civil contempt fine must be tailored to redress and compensate for those damages. In *State of New York v Unique Ideas (supra,* at 349), the Court further indicated that "[t]he award should be formulated not to punish an offender, but solely to compensate or indemnify private complainants *(Geller v Flamount Realty Corp.,* 260 NY 346; *Socialistic Co-op. Pub. Assn. v Kuhn,* 164 NY 473), here *represented but not displaced by the Attorney-General"* (emphasis added).

So too, in the case at bar, the private complainants were comprised of the tenants who were *"represented but not displaced by"* the HPD *(State of New York v Unique Ideas, supra,* at 349 [emphasis added]). Indeed, it was the tenants, not the HPD or its representatives, who suffered from the lack of heat and/or hot water; it was the tenants who endured the multiple other indignities resulting from the large number of violations left uncorrected and unrepaired in the building and in their apartments. It must necessarily be their damages which constitute the basis for any civil contempt fines. The fine assessed by the Civil Court, based on a simple multiplica-

tion of each separate housing violation by the $250 maximum statutory fine for unprovable damages, bore no relation whatever to the actual damages of the aggrieved parties—the tenants. Indeed, HPD has openly conceded that, rather than addressing the actual damages of the tenants, the civil contempt fines were sought to punish Deka and its agents for their prior noncompliance. This candid admission, in and of itself, provides a basis for vacating these civil contempt fines since they were improperly imposed as a punitive rather than a compensatory measure (see, People ex rel. Munsell v Court of Oyer & Terminer, 101 NY 245; St. Regis Mohawk Dev. Corp. v Cook, 181 AD2d 964; Matter of Beiny [Weinberg], 164 AD2d 233). Accordingly, the issue of the appropriate fine to be imposed for civil contempt was properly remitted to the Civil Court by the Appellate Term for a hearing on the issue of actual damages suffered by the tenants.

■ Insofar as the criminal contempt fines are concerned, HPD's formula of multiplying the number of violations by the maximum statutory fine of $1,000 is similarly improper because, as with the civil contempt fines, the formula suggested bears no legitimate relationship to the underlying statutory aim. The purpose of criminal contempt is the vindication of the court's authority. An award based on a simple multiplication of the $1,000 maximum fine for each violation could easily exceed that which is necessary to vindicate the court's authority, and could well lead to unwarranted sanctions, just as occurred in the case at bar. Criminal contempt is an offense against judicial authority, not against a party. A court, therefore, "cannot accept the parties' private resolution in the matter" (Matter of Department of Envtl. Protection v Department of Envtl. Conservation, 70 NY2d 233, 240, supra). Moreover, the gravamen of criminal contempt is the willful disobedience of the court's lawful mandate. It is the act of disobedience, not the multiple manifestations or consequences of that act, which constitutes a contempt. A $1,000 fine assessed against each of the three contemnors adequately vindicated the authority of the court. Accordingly, the Appellate Term properly reduced the criminal contempt fine to that amount (see, King v Barnes, 113 NY 476).

■ With respect to the civil penalties imposed, HPD has agreed on appeal to a reduction of said penalties to the extent that they are attributable to the 27 violations which Deka maintains were improperly considered by the Civil Court. Accordingly, we are reimposing those penalties minus the

amounts related to the 27 disputed violations for total civil penalties of $247,445. Deka's argument on appeal that it was improper for the Civil Court to presume that the conditions which gave rise to each violation continued through the last day of the trial absent proof that each violation was corrected is without merit. It is well settled that the use of such a presumption by the trial court was well within its discretion *(see, Department of Hous. Preservation & Dev. v De Bona,* 101 AD2d 875).

We turn now to Deka's contention that, based on the magnitude of the contempt fines and the civil penalties imposed, Deka was constitutionally entitled to a jury trial.

■ The Sixth Amendment of the United States Constitution and article I (§ 2) of the New York Constitution guarantee the right to trial by jury in criminal prosecutions *(Duncan v Louisiana,* 391 US 145, 157-158). Moreover, it is now well established that a jury trial must be made available upon demand, in all serious criminal contempt cases. That right to trial by jury, however, is not applicable to those criminal contempts classified as petty offenses *(Bloom v Illinois,* 391 US 194).[2] The Supreme Court initially established a fixed dividing line between petty and serious offenses, with those crimes carrying a sentence of more than six months being classified as serious crimes and those carrying a sentence of six months or less as petty crimes *(Codispoti v Pennsylvania,* 418 US 506, 512). Under the applicable Federal case law, incarceration, not monetary sanctions, became the prevailing litmus test used to determine whether punishment was to be considered "serious" or "petty" *(Bloom v Illinois, supra; Frank v United States,* 395 US 147, 149-150; *Baldwin v New York,* 399 US 66, 69). In accord with this analysis, the Court of Appeals stated, in *Rankin v Shanker* (23 NY2d 111, 120), that the determination as to whether a contempt "is serious or petty * * * turns not on the amount of the fine which may be imposed but *solely* on the length of the prison sentence" (emphasis added).

In *Muniz v Hoffman* (422 US 454), however, decided seven years later, the Supreme Court signaled a possible change of view. While declining to reach or decide the question whether the imposition of a fine alone triggers the right to a trial by jury, the Court indicated that the essential issue is whether

2. A corporation enjoys the same right to trial by jury in criminal contempt cases as an individual *(see, United States v Troxler Hosiery Co.,* 681 F2d 934).

the offense is considered petty or serious, and suggested that the determination depended on the magnitude of the deprivation under the circumstances of the case. Subsequently, in *Blanton v North Las Vegas* (489 US 538), the Supreme Court expressed the view that the right to a jury trial did not depend solely on the length of any jail sentence imposed, but rather included a consideration of the seriousness of other punishments attached to the offense.

Finally, in the recent decision of *Mine Workers v Bagwell* (512 US —, 129 L Ed 2d 642), the Court provided an affirmative answer to the question left undecided in *Muniz v Hoffman (supra)*. The Court specifically held that the imposition of serious contempt fines, unaccompanied by imprisonment, constitutionally requires a jury trial if demanded. In light of these pronouncements, it is now clear that incarceration is no longer the only test used to distinguish between serious criminal contempts requiring a jury trial and petty ones which do not. Punitive monetary sanctions alone may engender a right to a jury trial.

In order to decide whether a monetary sanction triggers a right to a jury trial, there are two principal considerations. Firstly, it must be determined whether the sanction sought to be imposed is of a civil or criminal nature.[3] Civil contempts engender no right to a jury trial. A contempt fine is considered civil and remedial if it either "coerce[s] the defendant into compliance with the court's order, [or] compensate[s] the complainant for losses sustained" *(United States v Mine Workers,* 330 US 258, 303-304). "Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge" *(Mine Workers v Bagwell,* 512 US —, —, 129 L Ed 2d 642, 653, *supra; see also, Penfield Co. v Securities & Exch. Commn.,* 330 US 585). By contrast, a fine is considered crimi-

---

**3.** It is noted that these classifications have come under strong criticism. Several scholars have criticized as unworkable the traditional distinction between civil and criminal contempt. *(See, e.g.,* Dudley, *Getting Beyond the Civil/Criminal Distinction: A New Approach to the Regulation of Indirect Contempts,* 79 Va L Rev 1025, 1033 [1933] [describing the distinction between civil and criminal contempt as "conceptually unclear and exceedingly difficult to apply"]; Martineau, *Contempt of Court: Eliminating the Confusion between Civil and Criminal Contempt,* 50 U Cin L Rev 677 [1981] ["Few legal concepts have bedeviled courts, judges, lawyers and legal commentators more than contempt of court"]; Moskovitz, *Contempt of Injunctions, Civil and Criminal,* 43 Colum L Rev 780 [1943]; Goldfarb, The Contempt Power, at 58 [1963] [describing "the tangle of procedure and practice" resulting from this "unsatisfactory fiction"].)

nal if it is punitive and deterrent in nature, seeking to punish for past disobedience. While "state law provides strong guidance about whether or not the State is exercising its authority 'in a nonpunitive, noncriminal manner' * * * the labels affixed either to the proceeding or to the relief imposed * * * are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law" *(Hicks v Feiock,* 485 US 624, 631). It is the substance of the proceeding and the character of the relief that is critical and controlling.

The second consideration in determining whether a monetary sanction triggers a right to a jury trial is whether the amount of the fine rises to a level where it is considered to be a serious sanction. The right to trial by jury applies only to serious criminal sanctions; thus courts may still impose non-compensatory petty fines for contempts without conducting a jury trial *(see, Taylor v Hayes,* 418 US 488, 495). In *Mine Workers v Bagwell* (512 US —, —, n 5, 129 L Ed 2d 642, 658, n 5, *supra),* the Supreme Court explicitly left open the question of "what magnitude of contempt fine may constitute a serious criminal sanction". The Court noted that in *Muniz v Hoffman* (422 US 454, *supra),* it was determined "that a fine of $10,000 imposed on a union was insufficient to trigger the Sixth Amendment right to jury trial" *(Mine Workers v Bagwell,* 512 US, *supra,* at —, n 5, 129 L Ed 2d, *supra,* at 658, n 5). The Court further stated that it "need not answer today the difficult question where the line between petty and serious contempt fines should be drawn, since a $52,000,000 fine unquestionably is a serious contempt sanction" *(Mine Workers v Bagwell,* 512 US, *supra,* —, n 5, 129 L Ed 2d, *supra,* at 658, n 5). Federal circuit courts, in addressing this issue, have found that a broad spectrum of monetary sanctions constitute serious fines *(see, Douglass v First Natl. Realty Corp.,* 543 F2d 894 [contempt fine of $5,000 assessed against individual entitled him to jury trial]; *Girard v Goins,* 575 F2d 160, 165 [contempt fine of $2,500 assessed against individual required jury trial]; *United States v McAlister,* 630 F2d 772 [individual facing $1,000 fine entitled to jury trial]; *United States v Professional Air Traffic Controllers Org.,* 678 F2d 1 [$5,000 fine imposed on union president entitled him to a jury trial]). In many of the cases, the right to a jury trial was gauged according to the ratio of the fine imposed to the defendant's ability to pay *(see, United States v Troxler Hosiery Co.,* 681 F2d 934, *supra* [a contempt fine of $80,000 was not found to

constitute a serious sanction, considering the financial ability of the corporate defendant]).

In the case at bar, the appellant Deka failed to introduce into evidence any financial data or other records, thus rendering any such analysis impossible (see, New York State Natl. Org. for Women v Terry, 886 F2d 1339, 1353, cert denied 495 US 947 ["A contemnor's failure to provide financial information upon which the burden of a sanction may be evaluated 'may not be charged * * * against the [petitioner] or result in a holding that the [trial] court abused its discretion in imposing the sanction' "]).

Deka relies rather on United States v Twentieth Century Fox Film Corp. (882 F2d 656), in which the United States Court of Appeals for the Second Circuit held that corporations, regardless of their financial resources, are entitled to a jury trial for criminal contempt when the fine imposed exceeds $100,000. Deka contends that pursuant to United States v Twentieth Century Fox Film Corp. (supra), it is entitled to a jury trial since HPD still demands a total of $313,695 in punitive contempt fines and penalties ($53,000 in criminal contempt fines, $13,250 in civil contempt fines, and $247,445 in civil penalties).

With the foregoing case law in mind, we now consider the penalties and fines imposed in this case. Insofar as the criminal contempt fines are concerned, those fines, as reduced, are clearly petty contempts, and, therefore, do not engender any right to a jury trial (see, Taylor v Hayes, 418 US 488, 495, supra; Bloom v Illinois, 391 US 194, 210, supra).

With respect to the civil contempt fines, the Appellate Term properly remitted this issue for a hearing in order to determine the " 'actual damages' " suffered by the tenants. Contrary to the direction of the Appellate Term, however, we find that the appellants are not entitled to a jury trial on this issue. A civil contempt fine based on actual damages is, by definition, compensatory and not punitive in nature, and does not permit the invocation of a right to trial by jury under either the Sixth Amendment or under article I (§ 2) of the New York State Constitution (see, United States v Mine Workers, 330 US 258, 302-303; Sheet Metal Workers v Equal Empl. Opportunity Commn., 478 US 421).

Finally, we address the civil penalties imposed. Deka argues that these penalties, while denominated as "civil", are actually punitive in nature, and that since the amounts involved

exceed the $100,000 threshold as set forth in *United States v Twentieth Century Fox Film Corp.* (882 F2d 656, *supra*), Deka is constitutionally entitled to a jury trial.

Each of the cases cited by Deka, including *United States v Twentieth Century Fox Film Corp.* (882 F2d 656, *supra*),[4] were contempt cases, wherein the courts found that a contempt sanction constituted criminal punishment and thus, engendered a right to a jury trial *(see, e.g., Hicks v Feiock,* 485 US 624, *supra; United States v Halper,* 490 US 435; *Douglass v First Natl. Realty Corp.,* 543 F2d 894, *supra; United States v Professional Air Traffic Controllers Org.,* 678 F2d 1, *supra; Spindelfabrik Suessen-Schurr v Schubert & Salzer Maschinenfabrik AG.,* 903 F2d 1568; *Securities & Exch. Commn. v Simpson,* 885 F2d 390). There has been no showing by Deka of any civil penalty provision that has been held to be sufficiently criminal in nature so as to invoke the protections of the Sixth Amendment.[5]

Deka relies principally on the case of *United States v Halper* (490 US 435, *supra*), in which the Supreme Court found that the imposition of a civil penalty provision under the Federal False Claims Act against a defendant who had been convicted and sentenced in a prior criminal trial constituted a violation of the Double Jeopardy Clause. The *Halper* holding, however, was limited to a determination concerning whether a civil penalty could constitute punishment solely for the purpose of the Double Jeopardy Clause *(United States v Halper, supra,* at 446). No claim was raised or decided in *Halper* as to whether the possible imposition of civil penalties entitled the defendant to a jury trial. Nonetheless, to the extent that the Court found that a civil penalty provision constituted criminal punishment, albeit under a Double Jeopardy Clause analysis, *Halper* raises the possibility that a given civil penalty, if punitive, could engender additional constitutional protections, including, specifically, the right to a jury

---

4. The Second Circuit's reasoning has not yet been adopted by any other court, nor was its decision considered or cited in *Mine Workers v Bagwell* (512 US —, 129 L Ed 2d 642, *supra*).

5. *See, e.g., United States v Williams Co.* (498 F2d 414 [Court rejected defendants' claims that civil penalties of $456,000 and $356,000 assessed under section 5 *(l)* of the Federal Trade Commission Act (15 USC § 45 *[l]*) were sufficiently criminal in nature to entitle them to a jury trial]); *see also Mohawk Excavating v Occupational Safety & Health Review Commn.* (549 F2d 859, 862-863 [no Sixth Amendment entitlement to trial by jury when penalties are assessed pursuant to Occupational Safety and Health Act of 1970]).

trial.[6] As set forth in *Halper*, the determination rests on an examination of the statutory language, structure, and intent, including a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve *(United States v Halper, supra*, at 448). In the case at bar, Deka has offered no substantive arguments in this regard. Deka has conclusorily stated that the civil penalties imposed against it were punitive. This bald assertion falls far short of the required showing of "clearest proof" that the penalties were so punitive, either in purpose or effect, as to trigger the protections afforded by the United States Constitution to a criminal defendant *(United States v Ward*, 448 US 242, 248-250).

In any event, even if Deka were entitled to a jury trial, such a right was clearly waived in this case. Specifically, while Deka has argued strenuously that a jury trial was required, it fails to refer us to any evidence in the record that one was ever demanded, requested, or sought. Indeed, though well aware from the outset that it could be subjected to substantial contempt fines and penalties, Deka waited until this appeal to first make known its purported desire for. a trial by jury[7] *(see, Musidor, B.V. v Great Am. Screen*, 658 F2d 60, 65-66, *cert denied* 455 US 944).

It is well settled that applications seeking the imposition of criminal contempt sanctions arising out of a civil action constitute a civil special proceeding to which the rules of civil procedure governing jury demands apply *(see, Matter of Douglas v Adel*, 269 NY 144, 146; *People ex rel. Negus v Dwyer*, 90 NY 402; *Department of Hous. Preservation & Dev. v 24 W. 132 Equities*, 137 Misc 2d 459, *affd* 150 AD2d 181). Pursuant to CPLR 410 and 4102 (a), entitlement to a jury trial is dependent upon the making of a timely demand, and, in the absence of such a demand, it is waived *(see, Di Stephan v Di Stephan*, 106 AD2d 603, 606; *Import Alley v Mid-Island Shopping Plaza*, 103 AD2d 797, 798). Accordingly, by failing to make such a demand in this case, Deka waived any right it may have had to a jury trial. Contrary to Deka's contention, the requirement of a written waiver under article I (§ 2) of the

---

6. In *Tull v United States* (481 US 412), the Supreme Court held that when civil penalties are sought, the Seventh Amendment requires that a demand for a jury trial be granted, the Seventh Amendment, however, has never been held applicable to the States.

7. The magnitude of the contempt fines and penalties was readily apparent from the face of the settlement stipulations entered into by Deka.

New York State Constitution did not render Deka's waiver ineffective. Article I (§ 2), by its express terms, applies only to "criminal cases". The procedural safeguards contained therein were intended solely for criminal prosecutions *(see, People v Cosmo,* 205 NY 91; *Cancemi v People,* 18 NY 128; *People v Duchin,* 12 NY2d 351, 353).

MILLER, J. P., JOY and ALTMAN, JJ., concur.

Ordered that the order and judgment is modified by (1) deleting the provision thereof which vacated the civil penalties imposed and substituting therefor a provision reducing the civil penalties to $247,445; and (2) deleting the provision thereof which vacated the findings and fines of civil contempt and remitted the matter to the Civil Court of the City of New York, Queens County, for a jury trial de novo on those issues, and substituting therefor a provision vacating the amount of the civil contempt fines assessed and remitting the matter to the Civil Court of the City of New York, Queens County, for a hearing only on the issue of the actual damages suffered by the tenants as a result of the respondents' failure to cure the cited housing violations; as so modified, the order and judgment is affirmed, without costs or disbursements.