Butler v Department of Hous. Preserv. & Dev. (2026 NY Slip Op 50234(U))

[*1]

Butler v Department of Hous. Preserv. & Dev.

2026 NY Slip Op 50234(U)

Decided on February 24, 2026

Civil Court Of The City Of New York, Kings County

Sanchez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 24, 2026
Civil Court of the City of New York, Kings County

Julian Butler, Petitioner(s)

againstDepartment of Housing Preservation and Development, Respondent(s)

Index No. LT-001293-25/KI

Enedina Pilar Sanchez, J.

NYSCEF Doc. No. 1-19
This hearing commenced and concluded on February 13, 2026. Before the court is Petitioner's Order to Show Cause to hold Respondent in contempt for failure to comply with the Order of October 8, 2025. There has been no written opposition filed to the instant motion. In this HP proceeding, filed against the Department of Housing Preservation and Development ("HPD"), four orders [FN1]
were issued regarding correcting conditions in the subject premises. 
Background, Procedural History, and court Orders
Petitioner is a tenant in a building managed/owned by the Department of Housing Preservation and Development ("HPD"). In May 2025 Petitioner filed the instant verified petition seeking an Order to Correct violations. Among the conditions described in the petition included "windows broken, bathroom tiles, front door lock, no cabinets in the kitchen, no bathroom sink and floor coming up." Respondent filed a notice of appearance. The Notice of Appearance does not indicate which unit or division within HPD is involved with this property.
On the first court date, Petitioner informed the court that he was previously living as 139 Noll Street, a building next the subject building. Petitioner was relocated to the subject promises after a fire at 139 Noll Street. The fire occurred on or about November 20, 2024. He was given the key to the subject premises in January 2025. He was not permitted to inspect the subject premises before he signed the lease and expected to move in.
In June 2025, the case was adjourned for an HP inspection. The inspection took place on July 19, 2025. The inspector found conditions in violation of the housing code and the inspector wrote a report. A violation summary report, however, does not appear on the HPD website since the building is managed/owned by HPD. A report of new violations, however, was filed to NYSCEF Doc. No. 7 and the court has taken judicial notice of the report.
Since the commencement of this proceeding, Petitioner has stated that he has not been able to live in the apartment because there is no electricity. The Decision/Order of July 17, 2025, NYSCEF Doc.No.6, directed Respondent to investigate and correct this condition forthwith.
Respondent's counsel had objected to Petitioner mentioning the lack of electrical services in the Apartment as it was not written in the verified petition. The court ruled that the lack of electrical services may be addressed, and the petition was deemed so amended to include the lack of electricity in Apartment 1L. Lack of electricity is a proper housing condition to raise within an HP case. Furthermore, electrical services are an essential and basic amenity.
On August 5, 2025, the court issued a Decision/Order scheduling a hearing for August 22, 2025, to address the emergency condition of the lack of electricity. Respondent was ordered to commence the repairs in the Apartment on August 7, 2025. On the hearing date, Petitioner did not appear by the call of the default calendar. The case was dismissed without prejudice. Petitioner arrived after the default call and filed an Order to Show Cause to restore this case.
On September 3, 20205, the Order to Show Cause to restore the case was granted. The HP proceeding was adjourned to October 8, 2025. Petitioner had subpoenaed Con Edison to appear in court. Con Edison did not appear in court to explain why the Apartment did not have an electric meter or why an electric meter could not provide electricity to the Apartment.
On October 8, 2025, it was undeniable that the work in the bathroom was not done correctly. It was undisputed that the bathroom was not usable, and the bathtub tile work poorly done creating safety concerns. The court issued a Decision/Order directing Respondent to correct the bathtub tiles, which would require the work to be redone. Respondent was directed to correct the uneven floors in the Apartment and to address the lack of electricity in this Apartment.
Petitioner also presented the lease for the apartment where the fire occurred. During a conference it was stated that Petitioner was a squatter at the prior address, 139 Noll Street, and [*2]that therefore he was not a legal resident of the subject premises.[FN2]
Given Petitioner's lawful occupancy and the conditions in the subject premises, Respondent agreed to explore other options such as an alternative HPD apartment since Petitioner could not reside in the subject premises. The matter was adjourned to November 13, 2025.
On the adjourned date, the status quo was the same. The proceeding was adjourned again. On December 18, 2025, Petitioner filed the instant Order to Show Cause to hold Respondent in contempt because the repairs in the subject premises were not completed.
On January 30, 2026, the Order to Show Cause to hold Respondent in contempt was adjourned to February 13, 2026, for a hearing on all the open issues before the court.
Hearing on February 13, 2026
Petitioner and Respondent's witness, Mr. Acher, were sworn in and testified.
Petitioner credibly testified that conditions in the Apartment have not been corrected. Petitioner offered photographs which were marked in evidence. He testified that there is no bathroom sink, that the bathtub tiles are in the same condition as existed on October 8, 2025, that the Apartment is still without electricity, and that the floors are still uneven. Petitioner cannot live in the Apartment. He wants to be able to reside in the in the Apartment with his family.
Petitioner also described how he came to be a tenant, how he signed the lease before he was given the key and how he has tried to make the Apartment habitable.
Petitioner was not cross-examined.
Respondent's witness, Mr. Acher, testified that he is the construction Project Manager and the Deputy Director for the team at the subject building. He testified that after the October 8, 2025 Decision/Order the program switched the plan and instead looked for a new location for Petitioner. Mr. Acher testified that the new location is not ready, and it is located on 270 Conklin Avenue, Brooklyn, New York. Mr. Archer testified that the new location is about 5.5 miles from the subject premises, and it may be available in about 3 weeks or so. Mr. Archer testified that nothing more, additional repairs, have been done at the subject premises.
On cross-examination of Mr. Acher, Petitioner asked about the missing bathroom sink [*3]and the uneven floors in the Apartment. Petitioner asked whether there was a conversation with the engineer and that in that conversation it was stated that the sink could be installed and that the floors could be made to be level. Mr. Archer responded that these repairs would be extensive.
In closing, Respondent's counsel argued that this is not the forum to address relocation and that Petitioner's only option is to acceptance the unit being repaired at 270 Conklin Avenue.
Petitioner, in closing stated that when he was shown the apartment at 270 Conklin Avenue, the place was not ready, and that it would not be an alternative or safe housing for him and his family. Petitioner wants the repairs done to Apartment 1L at 143 Noll Street. He has been very patient. Since January 2025, when he was given the key, he has been trying to ready the Apartment for him and his family to move in and paying the rent.
Respondent did not present any documents regarding the cost incurred or to be incurred to provide electricity to the subject premises or the cost to install a sink in the bathroom or to make the floors level.
Discussion and Legal Conclusion
The Decision/Order of October 8, 2025, directed Respondent to correct the conditions in Apartment 1L at 143 Noll Street. The court's order is a proper judicial order, and it is binding upon the Respondent. The October 8, 2025 Order is clear, and the three Orders issued prior to October 8, 2025, have addressed the conditions in Apartment 1L that need to be corrected.
The lack of electricity, the uneven floors, and the lack of a bathroom sink were all noted in the July 17, 2025 Order to Correct and it directed Respondent to investigate and correct the conditions forthwith. Respondent did not present any compelling proof that steps were taken to address these conditions. Respondent's closing argument that as a housing unit with HPD it should not be questioned is not persuasive. Compliance with a proper judicial order is not erased or nullified by the position of the Respondent. See, Matter of Christopher C. v. NY State Office of Children & Family Servs., 298 AD2d 389 [2nd Dept 2002] Fishel v. New York State Div. of Hous. & Cmty. Renewal, 172 AD2d 835 [2nd Dept 1991].
Here, the Respondent is not relived of the obligation to remove violations of the housing code, to render the subject premises safe and habitable, and to comply with the Order of the court. The standards and obligations described within the Housing Maintenance Code are the minimum standard. The Apartment and the common/public areas should be safe and habitable. Regarding the electricity, it is reasonably intended for a residential lease to include access to electrical services. It is expected that residential units in New York State will have electrical services. See, Park West Management Corp v. Mitchell, 47 NY2d 316 (1979).[FN3]
Respondent did [*4]not explain or offered any evidence at the hearing why the Apartment was rented without a meter or why a meter has not been installed to allow for the delivery of electrical services.
The Decision/Order of October 8, 2025, does not seemed to have been taken very seriously. Nor did the October 8, 2025 Order created new obligations since the conditions have been addressed in the prior Orders of the court. The Respondent has been given time and time to come up with a plan to address the conditions. Instead, at closing it was argued that because another apartment, which is currently not fit for human habitation, was to be offered to Petitioner, Respondent is relieved of the mandate provided in the October 8, 2025 Order. The Court has taken judicial notice of the Department of Buildings (DOB) website regarding the offered substitute premises, and it shows that there is a partial stop work order on the property.[FN4]

Respondent's argument to the Order to Show Cause for contempt is specious and not support by any data. The HP Part was created for proceedings involving the enforcement of state and local laws for the establishment and maintenance of housing standards. Here the housing standards are reasonably expected to include electrical services, as provided in Article 10 of the Housing Maintenance Code. The argument that Respondent is in the process of working on other units throughout New York City, would be an ongoing goal of the agency. These objectives do not excuse the lack of non-compliance regarding Apartment 1L at 143 Noll Street.
The testimony and evidence presented at the hearing established that the violation of the court's October 8, 2025 Order was calculated to, and did, impair Petitioner's rights to reside in a habitable apartment. See, El-Dehdan v. El-Dehdan, 26 NY3d 19 [2015]; Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, 199 AD3d 423 [1st Dept 2021].
Here the financial sanction to compel compliance is to award Petitioner a remedy that under these circumstances propels compliance and accounts for how Petitioner's rights have been impaired. Civil contempt is imposed "not to punish, but rather, to compensate the injured private party or to coerce compliance with the court's mandate" Department of Hous. Preservation & Dev. v. Deka Realty Corp., 208 AD2d 37, [2nd Dept 1995] (citing Matter of Department of Envtl Protection v. Department of Envtl Conservation,70 NY2d 233, at 239).
Petitioner testified to paying rent since January 2025 through October 2025 although he was not able to live in Apartment 1L. This testimony was not refuted or contradicted. As a measure of damages to compensation the injured party, these rent payments are to be credited to Petitioner's account and no rent can be collected until Apartment 1L is rendered habitable. This means that Respondent must undertake additional steps to correct the conditions. These steps [*5]would need to be taken regardless of who resides in the Apartment to bring the building into compliance with the housing code. Renting substandard residential units to communities historically living in substandard housing perpetuates a cycle that must end with the very agency empowered to enforce the housing code.
Petitioner's Order to Show Cause is granted. Respondent's proposed alternative housing is not ready and not a viable plan. Petitioner has established that Respondent did not comply with the Order of October 8, 2025, and Respondent has not offered a viable explanation. The argument espoused at the conclusion of the hearing that Respondent "offered" another unit, is only partially inaccurate, as the unit is not habitable and still not one that can be occupied. On October 8, 2025, Respondent stated that they are waiting for new contractors to address these conditions including the complete lack of electricity in Apartment 1L. When Petitioner signed the lease, it was unknown to him that there was a problem with the electrical services. There was no evidence offered to explain this condition. The passage of time since the Order of October 8, 2025, and the testimony at the hearing, show a disregard for the judicial Order and to the detriment of the Petitioner. See also, Department of Hous. Preserv. & Dev. of the City of NY v. Belmont Ventures LLC, 2024 NY Slip Op 33506(U) [Civ Ct NY County 2024].
The court has discretionary power upon a finding of contempt to fashion a remedy according to the facts and circumstances presented. Respondent is directed to correct the conditions and to render Apartment 1L habitable, including addressing the lack of electricity and complete said work within 60 days of this Order.
Accordingly, it is ORDERED that Respondent is in contempt of the Order dated October 8, 2025, and Respondent shall correct the conditions within 60 days of this order and Respondent is to update the court within 30 days of the status of the work/repairs being done; and it is
ORDERED that Petitioner is granted a credit for the rents paid to Respondent from the time the lease was signed, and no rent is to be collected until the conditions are corrected, including the restoration of electrical services at the subject premises.
Upon Respondent's failure to comply, Petitioner may restore this matter to the calendar by filing an Order to Show Cause for all appropriate relief.
This Decision/Order will be filed to NYSCEF and emailed to the Petitioner.
This constitutes the Decision/Order of the court.
Date: February 24, 2026
Hon. Enedina Pilar Sanchez
Housing Court Judge

Footnotes

Footnote 1:The orders were issued on June 12, 2025; July 17, 2025; August 5, 2025; and October 8, 2025.

Footnote 2:There was no evidence to support the allegation that Petitioner was a squatter. The current lease for the subject premises was not presented. Petitioner testified that he went to 100 Gold Street, New York, New York to sign the lease. Petitioner testified that when he went to sign the lease, he was informed that he must sign the lease before he can see the Apartment. He signed the lease a week later he met a supervisor at the subject building and was given the key to Apartment 1L in January 2025. The Apartment was not ready to move in, it was not habitable and im-mediately Petitioner started paying rent and fixing the space so his family could move in.

Footnote 3:A residential lease is effectively deemed a sale of shelter and services by the landlord who impliedly warrants: first, that the premises are fit for human habitation; second, that the condition of the premises is in accord with the uses reasonably intended by the parties; and, third, that the tenants are not subjected to any conditions endangering or detrimental to their life, health or safety. at 324.

Footnote 4:According to DOB the property at 270 Conklin Avenue, Brooklyn, is listed as a two-family house and in need of major work. The work does not seem to be near completion, and it has active OATH/ECB violations