[41 NYS3d 490]

In the Matter of Niki Rossakis, Respondent, v New York State Board of Parole, Appellant.

First Department, November 10, 2016

### APPEARANCES OF COUNSEL

*Eric T. Schneiderman, Attorney General*, New York City (*Philip V. Tisne* and *Steven C. Wu* of counsel), for appellant.

*Richard M. Greenberg, Office of the Appellate Defender*, New York City, for respondent.

### OPINION OF THE COURT

GESMER, J.

In this appeal, we take the unusual step of affirming the annulment of a decision of respondent-appellant New York State Board of Parole denying parole to petitioner-respondent Niki Rossakis. We agree with the motion court that the Board's decision was so irrational as to border on impropriety and was therefore arbitrarily and capriciously rendered. However, we vacate the portion of the motion court's judgment which directed how the Board was to weigh the statutory factors.

### Facts[1]

On May 17, 1996, petitioner was convicted of murder in the second degree for shooting her husband Gary (decedent) on

---

1. We rely for our statement of facts solely on the record before this Court. That record does not include the minutes of petitioner's underlying criminal trial. In a prior decision of this Court, we denied the Board's motion asking us to take judicial notice of the transcripts of petitioner's criminal trial (*see Rossakis v New York State Bd. of Parole*, App Div, 1st Dept, 2016,

January 21, 1993. Petitioner has consistently maintained for two decades that decedent abused her physically and sexually throughout their marriage. She claims that he raped her in early 1993, leading to her having an abortion two weeks prior to the shooting. At that time, her physician advised the couple that she should not have sex for six weeks, so that she could heal from the procedure. Nevertheless, on the night before the shooting, decedent forced his fingers inside of her, and threatened to force her to have intercourse. She managed to extricate herself and spent the night downstairs. On the morning of the shooting, decedent reached for her crotch. When she pushed his hand away, he said, "I will get you later bitch." Petitioner then took decedent's gun from a nearby nightstand drawer and shot him in the head.

At trial, petitioner testified that she shot decedent because she feared he would rape her. Her expert witness testified that her behavior was not inconsistent with that of an abused woman. The jurors were instructed as to the defenses of justification and extreme emotional disturbance. On May 17, 1996, petitioner was convicted of murder in the second degree and criminal possession of a weapon in the second degree. The Appellate Division, Second Department found that her initial sentence of 23 years to life was excessive, and reduced it in the interests of justice to 15 years to life, the minimum for murder in the second degree (*see People v Rossakis*, 256 AD2d 366 [2d Dept 1998], *lv denied* 93 NY2d 929 [1999]).

Petitioner has now been in prison for over 20 years. During that time, she has obtained two Associate's degrees from Marymount Manhattan College and Bard College; successfully completed every rehabilitative program offered to her, including anger management and nonviolent conflict resolution techniques; acted as a teaching assistant and tutor to other inmates; served on the Inmate Grievance Resolution Committee, a committee composed of correctional staff and inmates hearing inmate complaints against the facility; and won praise for her work as a telephone operator for the Department of Motor Vehicles. She has been offered a job at a family violence agency upon her release. If released, she intends to complete her Bachelor's and Master's degrees, continue in therapy, and become involved with her church. Petitioner, who has no prior

Nos. M-3414/16, 3417/16). Despite our ruling, the Board nonetheless improperly cited to those transcripts in their briefs. Accordingly, we have disregarded these portions of the Board's briefs.

history of violent crime, received the best score possible on her Correctional Offender Management Profiling for Alternative Sanction (COMPAS) evaluation, indicating a low likelihood for violence, substance abuse, or criminal behavior.[2]

Petitioner has sought and been denied parole three times: in 2009, 2011, and, most recently, 2013. She challenged the Board's 2011 denial in a proceeding pursuant to article 78 of the CPLR. In a decision dated May 2, 2013 (the May order), Justice Kathryn E. Freed found that the Board had improperly focused on the seriousness of petitioner's offense without considering the other statutory factors, and ordered a new parole hearing. The Board appealed, triggering a stay of the May order. However, before the Board could perfect its appeal, petitioner appeared for a routine parole hearing in 2013.

At the 2013 parole hearing, petitioner testified,

> "I did the worst thing someone could do, and I killed . . . Gary, and I'm very, very sorry for that . . . . When I first started my bid, I saw myself as the victim. Today I know that Gary is the victim. I no longer harp on the abuse just to justify what I did to my husband. I was wrong. I should have just gotten up and left. I should have made more of an attempt to reach out and talk to people. I didn't do that. I isolated and started to self-destruct . . . . I made a horrible decision, and I'm sorry."

The Board denied her most recent request for parole on August 6, 2013, and withdrew its appeal of the May order.

The Board's denial consisted of a brief four-paragraph decision. In its first paragraph, the Board asserted that petitioner's release was incompatible with the welfare of society, largely mirroring the text of the Executive Law itself. The Board's second paragraph described the facts of the underlying offense and made mention of petitioner's substance use around the time of decedent's death. The Board's third paragraph summarily listed petitioner's institutional achievements with no further analysis. In its final paragraph, the Board concluded that petitioner lacked remorse, finding that she continued to

---

2. Implemented in conjunction with a 2011 revision to the Executive Law, the COMPAS assessment is an "evidence-based . . . assessment tool . . . . [It] delves deeply into the offender's criminal record and disciplinary history, family and social support network, use of drugs and readiness for employment in predicting risk" (John Caher, *Effect of Risk Assessment Rule on Parole Decisions Is Unclear*, NYLJ, Apr. 30, 2012 at 1, col 3).

blame decedent for his death and continued to identify as an abuse victim despite the jury's guilty verdict. Petitioner then commenced this proceeding, now on appeal before this Court, challenging the 2013 denial.

In an extensive opinion, the motion court found that the Board's 2013 decision was again based almost exclusively on consideration of petitioner's crime, and ignored the other applicable statutory parole factors, including petitioner's institutional achievements and remorse. The motion court ordered that petitioner receive a new parole hearing before a new panel of Commissioners. The order also directed

> "in the strongest way possible, that the Board consider all of the other factors which emphasize forward-thinking and planning. In other words, this new Board is not authorized to re-sentence or unduly consider the crime. That is but one factor. In other words, . . . the Board is instructed to evaluate the applicant as she is today and how she has prepared herself for her release back into society."

### Analysis

In an article 78 petition challenging a parole decision, the petitioner bears the burden to show that the decision is the result of " 'irrationality bordering on impropriety,' " and is thus arbitrary and capricious (*Matter of Silmon v Travis*, 95 NY2d 470, 476 [2000], quoting *Matter of Russo v New York State Bd. of Parole*, 50 NY2d 69, 77 [1980]). The Board must consider eight statutory factors enumerated in the Executive Law in determining whether an inmate should be released on parole, of which the following five are relevant to this appeal:

> "(i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interactions with staff and inmates . . . ; (iii) release plans including community resources, employment, education and training and support services available to the inmate . . . ; (v) any . . . statement made to the board by the crime victim or the victim's representative, where the crime victim is deceased or is mentally or physically incapacitated . . . ; (vii) the seriousness of the offense with due consideration to the type of

sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the pre-sentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest prior to confinement; and (viii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement" (Executive Law § 259-i [2] [c] [A]).

The Board is not obligated to refer to each factor, or to give every factor equal weight (*Matter of King v New York State Div. of Parole*, 190 AD2d 423, 431 [1st Dept 1993], *affd* 83 NY2d 788 [1994]). However, as this Court has previously held, "it is unquestionably the duty of the Board to give fair consideration to each of the applicable statutory factors as to every person who comes before it, and where the record convincingly demonstrates that the Board did in fact fail to consider the proper standards, the courts must intervene" (*id.* at 431). In particular,

> "[t]he role of the Parole Board is not to resentence petitioner according to the personal opinions of its members as to the appropriate penalty for murder, but to determine whether, as of this moment, given all the relevant statutory factors, he should be released. In that regard, the statute expressly mandates that the prisoner's educational and other achievements affirmatively be taken into consideration in determining whether he meets the general criteria relevant to parole release" (*id.* at 432).

The Board may not deny parole based solely on the seriousness of the offense (*Matter of Ramirez v Evans*, 118 AD3d 707 [2d Dept 2014]; *Matter of Gelsomino v New York State Bd. of Parole*, 82 AD3d 1097 [2d Dept 2011]).

Based on the record before us, we conclude that the motion court correctly determined that the Board acted with an irrationality bordering on impropriety in denying petitioner parole. The Board focused exclusively on the seriousness of petitioner's conviction and the decedent's family's victim impact statements (which it incorrectly described as "community opposition to her release") without giving genuine consideration to petitioner's remorse, institutional achievements, release plan, and her lack of any prior violent criminal history.

The Board's statement that "[d]espite your assertions of abuse being rejected by a jury after hearing you testify for eight days, and having no corroboration on record of the abuse, you continue to blame your victim for his death," disregards petitioner's testimony accepting responsibility and expressing remorse for her actions. It also fails to recognize that petitioner may legitimately view herself as a battered woman, even though the jury did not find that she met New York's exacting requirements for the defenses of justification (Penal Law § 35.15 [2]) and extreme emotional disturbance (Penal Law § 125.25 [1] [a]). Indeed, her criminal trial attorneys submitted letters to this effect. As one of those attorneys, now a law professor, highlighted, our collective understanding of domestic violence is far greater today than when petitioner was arrested and tried, and this dearth of knowledge may very well have affected how the jury viewed the instructions as to these defenses. While we cannot and do not attempt to retry petitioner, we agree with the motion court that apologizing for the shooting while steadfastly maintaining that she was an abuse victim does not indicate a lack of remorse for her actions.

The Board summarily listed petitioner's institutional achievements, and then denied parole with no further analysis of them, in violation of the Executive Law's requirement that the reasons for denial not be given in "conclusory terms" (Executive Law § 259-i [2] [a]). Moreover, the Board's decision began by stating that petitioner's release "would be incompatible with the welfare of society and would so deprecate the serious nature of the crime as to undermine respect for the law." These statements came directly from the language of Executive Law § 259-i (2) (c), further violating the Executive Law's ban on the Board making conclusory assertions (see Executive Law § 259-i [2] [a]).

Despite petitioner's impressive COMPAS score, evidencing her low risk for violence or substance abuse upon release, the Board asserted that there is a "reasonable probability" that petitioner would again violate the law, based on the crime of which she was convicted, her addiction to prescription medication around the time of her arrest and trial in the early 1990s, and her use of drugs in the early 1980s, prior to her marriage to decedent. The Board's unsupported finding echoes decedent's family's victim impact statements, which emphasized petitioner's prior drug use and their belief that she is a dangerous

person. Decedent's family also emphasized that petitioner would have nowhere to go if released; however, the record makes clear that petitioner had secured a job offer and was taking concrete steps to secure housing. As noted by our sister court in the Third Department, "When the Legislature required the Board to consider victims' statements, it undoubtedly realized that these submissions would often be emotional and at times even touch upon inappropriate matters" (*Matter of Duffy v New York State Dept. of Corr. & Community Supervision*, 132 AD3d 1207, 1209 [3d Dept 2015]). In this case, we find that the Board inappropriately relied on claims in decedent's family's victim impact statements that were affirmatively rebutted by the objective evidence supporting petitioner's release.

Among the many factors the Board must consider in granting or denying parole is the "recommendations of the sentencing court" (Executive Law § 259-i [2] [c] [A] [vii]). Here, the court that pronounced the sentence petitioner is currently serving is the Second Department. That Court reduced petitioner's sentence to 15 years to life, holding that the trial court's sentence of 23 years to life was excessive (*see Rossakis*, 256 AD2d at 366). However, as the motion court noted, the Board's repeated denials to petitioner of parole have had the effect of undermining this sentence reduction.

■ For all these reasons, we affirm the motion court's finding that the Board acted with irrationality bordering on impropriety and therefore arbitrarily and capriciously denied petitioner parole. However, we have previously held that "[w]hile the court is empowered to determine whether the administrative body acted arbitrarily, it may not usurp the administrative function by directing the agency to proceed in a specific manner, which is within the jurisdiction and discretion of the administrative body in the first instance" (*Burke's Auto Body v Ameruso*, 113 AD2d 198, 200-201 [1st Dept 1985]). Accordingly, we vacate so much of the motion court's order as may be read to direct the Board to focus on factors which emphasize forward thinking and planning over the other statutory factors.

We hold that petitioner is entitled to a new parole hearing to take place before new Commissioners who have not sat on any of petitioner's earlier parole hearings (*see Matter of Quartararo v New York State Div. of Parole*, 224 AD2d 266 [1st Dept 1996]; *King* 190 AD2d at 434-435). The hearing shall take place within 60 days from the issuance of this decision, and the Board shall render its decision within 30 days after the new hearing.

Accordingly, the judgment of the Supreme Court, New York County (Alice Schlesinger, J.), entered December 22, 2015, granting the petition to annul the Board's determination, dated August 6, 2013, which denied petitioner parole, and remanded the matter to the Board for a new hearing, should be modified, on the law and the facts as follows: (1) the Board shall schedule a new parole hearing for petitioner to take place within 60 days of the issuance of this decision before a board of Commissioners who have not sat on her previous hearings; (2) the Commissioners shall render a decision on the new hearing within 30 days from its completion; and (3) to the extent that the judgment directs the Commissioners to place any greater emphasis on any particular statutory parole factor(s), that directive is vacated; and the judgment should otherwise be affirmed, without costs.

MAZZARELLI, J.P., SWEENY, ACOSTA and MOSKOWITZ, JJ., concur.

Judgment Supreme Court, New York County, entered December 22, 2015, modified, on the law and the facts as follows: (1) the Board shall schedule a new parole hearing for petitioner to take place within 60 days of the issuance of this decision before a board of Commissioners who have not sat on her previous hearings; (2) the Commissioners shall render a decision on the new hearing within 30 days from its completion; and (3) to the extent that the judgment directs the Commissioners to place any greater emphasis on any particular statutory parole factor(s), that directive is vacated; and the judgment should otherwise be affirmed, without costs.