Matter of Kellogg v New York State Bd. of Parole (2018 NY Slip Op 01425)





Matter of Kellogg v New York State Bd. of Parole


2018 NY Slip Op 01425


Decided on March 6, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 6, 2018

Sweeny, J.P., Manzanet-Daniels, Gische, Kahn, Oing, JJ.


5707 160366/16

[*1]In re Laurie Kellogg, Petitioner-Respondent,
v
The New York State Board of Parole, Respondent-Appellant.


Eric T. Schneiderman, Attorney General, New York (Philip V. Tisne of counsel), for appellant.
Spektor & Tsirkin, P.C., New York (Vladimir Tsirkin of counsel), for respondent.



Judgment (denominated an order), Supreme Court, New York County (Arthur F. Engoron, J.), entered on or about March 23, 2017, granting the petition to vacate the denial of parole and order a new parole hearing by directing respondent to grant petitioner parole within 30 days of the judgment, unanimously modified, on the law, to vacate the directive that respondent grant petitioner parole, and to direct respondent to hold a new parole hearing within 60 days of entry of this order before a board of commissioners who have not sat on her previous hearings, and otherwise affirmed, without costs.
In 1991, petitioner learned that her husband was molesting a 16-year-old who lived with them and babysat their sons. While the husband was spending the weekend at a family cottage near Seneca Lake, petitioner, the babysitter, and the babysitter's boyfriend, as well as two other teens, drove to the cabin to confront the husband about the abuse. The group took the husband's loaded handgun with them.
Driving through the night, they arrived at the cottage at approximately 4:00 a.m. As they pulled up, the sitter's boyfriend leapt from the truck, took the handgun, entered the cottage, and shot the husband multiple times as he slept, killing him. During this time, petitioner remained in the truck. Afterwards, the group tossed the gun into a creek and returned home.
The sitter's boyfriend subsequently pleaded guilty to second-degree (intentional) murder and first-degree conspiracy and was sentenced to 25 years to life.
After trial, petitioner was found guilty of second-degree (felony) murder, first-degree manslaughter, first-degree burglary, and possession of a weapon, but was acquitted of intentional murder and multiple degrees of conspiracy.
As an inmate, petitioner participated in numerous programs, including working as a teacher's aide and helping inmates obtain their GEDs, training service dogs, and serving as a chaplain's clerk. Notably, petitioner compiled an extraordinary disciplinary record without a single Tier 2 or 3 disciplinary infraction, despite decades in prison. In July 2015, petitioner's risk assessment placed her in the lowest category of likelihood of reoffense.
At the parole hearing, petitioner maintained, consistent with the jury verdict, that she never conspired to kill her husband and did not intend to kill him. Petitioner emphasized, however, her sense of responsibility for making "choices and decisions that led to a chain of events that led to the death of [her] husband."
Petitioner attempted to explain that she had been convicted on a felony murder theory, rather than intentional murder, but, being a layperson, was unable to clearly convey the distinction.
The commissioners acknowledged that petitioner presented a low risk of reoffense. Nonetheless, near the end of the hearing, the commissioners asked petitioner to explain in "what significant way [she] changed," because they did not "see where [she had] admitted to being such a bad person." Petitioner replied that she "[did not] believe that [she] was a horribly bad person." Instead, she was "young and naive" and "made some bad choices," which she [*2]recognized now "look[ing] back at 51, as opposed to that young girl at 16, who married a 33-year-old man." Petitioner "wished that [she] hadn't been impulsive" and "understood now that every decision we make, everything we say carries weight, carries responsibility."
The commissioners denied parole, finding that if released at that time "there [wa]s a reasonable probability that [petitioner] would not live and remain at liberty without again violating the law." The commissioners emphasized that petitioner had failed to admit responsibility for the crimes she had been found guilty of committing, noting that it was not until the end of the interview that she "expressed any emotion approaching remorse." Petitioner's administrative appeal was denied.
Supreme Court granted petitioner's article 78 petition, stating, inter alia, that "[s]ubjective views of [petitioner's] alleged lack of remorse . . . cannot be allowed to override objective evidence of the last 25 years," noting that petitioner had received "not a single complaint, much less any infraction [and] no word of bad behavior." The court reflected, "Does saying you are sorry,' as a means to seek freedom from incarceration, mean that you are less likely to re-offend than if you do not?" We now modify to remand for a new hearing, rather than outright release, and otherwise affirm.
The jury acquitted petitioner of intentional murder and conspiracy to commit murder, while convicting her of burglary, felony murder, and manslaughter. The manslaughter conviction in particular expresses a clear finding on the part of the jury that, while petitioner wished her husband harm, she either did not intend that he die, or acted under the influence of extreme emotional disturbance, or both (see Penal Law § 125.20[1], [2]).
The commissioners failed to appreciate that petitioner's murder conviction was not for intentional murder, but rather for second-degree felony murder. The felony murder rule, of course, provides that a person is guilty of second-degree murder when, "[a]cting either alone or with one or more other persons, [she] commits or attempts to commit [violent crimes including] burglary, . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, [she], or another participant, . . . causes the death of a person other than one of the participants" (Penal Law § 125.25[3]). In essence, and particularly in the context of a burglary conviction, the felony murder rule imposes strict and vicarious liability for a killing that one did not intend, provided that it was the result of an enumerated felony that one did intentionally commit. Intent to kill plays no role in a finding of felony murder (see People v Howard, 241 AD2d 920, 921 [4th Dept 1997], lv denied 90 NY2d 940 [1997]; see Matter of King v New York State Div. of Parole, 190 AD2d 423, 433-434 [1st Dept 1993] [holding that BOP erred in relying on felony murder conviction as aggravating factor supporting denial of parole], affd 83 NY2d 788 [1994]).
At the parole hearing, petitioner nonetheless accepted responsibility for her "choices and decisions that led to a chain of events that led to the death of [her] husband." Far from showing any lack of insight into her crime, petitioner's testimony at the parole hearing was truthful, accurate, and consistent with what the jury found happened in 1991.
Accordingly, respondent's determination denying petitioner parole manifested "irrationality bordering on impropriety," warranting granting the petition to vacate the denial of parole (Matter of Silmon v Travis, 95 NY2d 470, 476 [2000] [internal quotation marks omitted]). [*3]The proper remedy is, however, not release, but a new hearing (see Matter of Rossakis v New York State Bd. of Parole, 146 AD3d 22, 29 [1st Dept 2016]; Matter of Newton v Dennison, 47 AD3d 538, 538 [1st Dept 2008]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MARCH 6, 2018
CLERK