Matter of Ferrante v Stanford (2019 NY Slip Op 03334)





Matter of Ferrante v Stanford


2019 NY Slip Op 03334


Decided on May 1, 2019


Appellate Division, Second Department


Leventhal, J.P., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 1, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

JOHN M. LEVENTHAL, J.P.
ROBERT J. MILLER
COLLEEN D. DUFFY
VALERIE BRATHWAITE NELSON, JJ.


2016-06336
 (Index No. 2789/15)

[*1]In the Matter of Danielle Ferrante, etc., respondent,
v
Tina M. Stanford, etc., appellant.



APPEAL by Tina M. Stanford, as the Chair of the New York State Parole Board, in a proceeding pursuant to CPLR article 78 to review a determination of the New York State Parole Board dated December 15, 2014, which, after a parole release review and interview pursuant to Executive Law § 259-i, denied the petitioner's request to be released on parole, from an order of the Supreme Court, Dutchess County (Maria G. Rosa, J.), dated May 24, 2016, and entered in Dutchess County. The order, insofar as appealed from, granted the petitioner's motion to hold Tina M. Stanford in civil contempt for failure to comply with a judgment of the same court dated October 2, 2015, and imposed a fine upon her in the sum of $500 per day commencing June 7, 2016, until a new parole interview is held and a decision is issued in accordance with Executive Law § 259-i(2).



Letitia James, Attorney General, New York, NY (Anisha S. Dasgupta and Philip V. Tisne of counsel), for appellant.
Kathy Manley, Selkirk, NY, for respondent.



LEVENTHAL, J.P.


OPINION & ORDER
Tina M. Stanford, as the Chair of the New York State Parole Board (hereinafter the Chair or the appellant), appeals from an order of the Supreme Court which, among other things, held her in civil contempt for the manner in which the New York State Parole Board (hereinafter the Board) conducted a de novo determination on the petitioner's application for parole release. We agree with the Supreme Court's determination granting the petitioner's motion to hold Stanford, as Chair of the Board, in civil contempt. According to our research, this case marks the first time the Appellate Division has upheld a finding of civil contempt which was based on the manner in which the Board conducted a de novo determination of a petitioner's parole release application. We emphasize, however, that our holding is limited to the unique facts of this particular case.
In 1975, John MacKenzie (hereinafter the petitioner) shot and killed Police Officer Matthew Giglio during the course of a burglary. The petitioner was convicted of murder in the second degree, among other crimes, upon a jury verdict, but this Court reversed the judgment of conviction and ordered a new trial based on the improper admission into evidence of certain pretrial custodial statements (see People v MacKenzie, 78 AD2d 892). Following a second trial, the jury convicted the petitioner of murder in the second degree, manslaughter in the second degree, burglary in the second degree, grand larceny in the second degree, criminal possession of a weapon in the third degree, and possession of burglar's tools. At sentencing, the County Court commented that the petitioner shot Officer Giglio, who was in uniform and whose weapon was holstered, at close range, grievously wounding him and causing his death some 10 weeks later. The County Court sentenced the petitioner to an aggregate term of imprisonment of 25 years to life. This Court affirmed the [*2]petitioner's judgment of conviction, holding that, although certain pretrial custodial statements were improperly admitted into evidence at the second trial, that error did not require reversal (see People v MacKenzie, 193 AD2d 700). The petitioner became eligible for parole release in 2000.
In December 2014, the petitioner, who was then 68 years of age and had been incarcerated for nearly 40 years, appeared before the Board in connection with his eighth parole release application interview. In support of his application, the petitioner submitted a personal statement, as well as numerous letters advocating for his release, including letters from a former prosecutor, a retired judge, and a former bishop of Albany. The petitioner's institutional record reflected that he earned three college degrees, received numerous commendations, including one for providing assistance to a corrections officer who fell ill, had no disciplinary infractions since 1980, assumed leadership positions in various prison programs, worked for years to found a Victims' Awareness Program in prison, and was assessed "low" for all risk factors on his Correctional Offender Management Profiling for Alternative Sanction (hereinafter COMPAS) risk assessment (see Matter of Cassidy v New York State Bd. of Parole, 140 AD3d 953, 954).
The Board denied the petitioner's application for parole release. After exhausting his administrative remedies, the petitioner commenced a proceeding pursuant to CPLR article 78 to annul the Board's determination and to direct the Board to conduct a de novo interview before a different panel of the Board. In a judgment dated October 2, 2015, the Supreme Court, in effect, granted the petition and annulled the Board's determination. The Supreme Court concluded, inter alia, that the Board's determination to deny parole release was not supported by an application of the factual record to the statutory factors set forth in Executive Law § 259-i, that it was clear that the Board's determination was based exclusively on the severity of the petitioner's offense, and that there was no rational support in the record for the Board's determination. The Supreme Court remitted the matter to the Board "to make a de novo determination on petitioner's request for parole release" to be held before a different panel of the Board. The Board did not appeal from the Supreme Court's judgment.
On December 15, 2015, the Board conducted a de novo interview before a different panel of the Board. During the interview, the petitioner discussed the crimes underlying his convictions, his rehabilitative efforts, his remorse, and his release plans. He stated that, around the time of the crimes, he was working as a "fence," a sort of "middleman" for stolen goods. The petitioner made statements to the effect that, having taken a large number of prescription pills in the time leading up to the crimes, he did not remember shooting Officer Giglio. He said, however, "it's my fault, a hundred percent my fault." The petitioner later added, "I shouldn't [have] allowed myself to take medication knowing that I wouldn't remember or know what I was doing. So it's my fault, my responsibility today. Believe me, I did not wake up that morning thinking I would do a crime, let alone shoot anyone, let alone a police officer." The petitioner said that he worked for 13 years to found the Victims' Awareness Program "in memory of Matthew [Officer Giglio], to show his family that this is the best I can do to make up for it, although I can't possibly make up for them losing their father." The petitioner spoke about his offers for employment and housing, and about the family and other support resources available to him, if he were released. He submitted additional letters of support as well as an updated COMPAS assessment wherein he again was assessed "low" for all risk factors. That month, the Board denied his application for parole release.
The petitioner moved to hold the appellant in civil contempt for failure to comply with the judgment dated October 2, 2015. In an order dated March 28, 2016, the Supreme Court stated that the Board's December 2015 determination "appear[ed] to suffer from the same infirmities as the vacated December 2014 [determination]" but, noting that the court did not have the full record, "declin[ed] to make a summary determination as to whether an order of contempt [wa]s warranted based on the papers before it." The Supreme Court instructed that it would conduct a hearing on May 20, 2016, on the petitioner's civil contempt motion unless an "actual de novo hearing" was held before that date. Thereafter, the same court held a hearing on the petitioner's motion. The petitioner testified at the hearing. Although the Board participated in the hearing, it did not present witnesses.
Following the hearing, the Supreme Court, in the order appealed from, inter alia, granted the petitioner's motion, held the appellant in civil contempt for failing to comply with the judgment dated October 2, 2015, and imposed a fine upon the appellant in the sum of $500 per day commencing June 7, 2016, until a de novo interview was held and a decision was issued in accordance with Executive Law § 259-i. The Supreme Court wrote that it could reach no other [*3]conclusion than that the Board denied parole release solely on the basis of the petitioner's underlying conviction. The Supreme Court indicated that it could not "gleam from the record before it, the testimony presented or the lack of testimony presented on behalf of the [appellant] any basis for the parole board to have denied release other than on the basis of the underlying crime. . . . This case begs the question, if parole isn't granted to this petitioner, when and under what circumstances would it be granted?"
Subsequently, following the petitioner's death, this Court granted the appellant's application, inter alia, to substitute Danielle Ferrante, as administrator of the petitioner's estate, for the deceased petitioner, and to amend the caption accordingly. Since the questions raised on this appeal concern the civil contempt finding rendered against the appellant and the amount of the fine imposed for that contempt, the petitioner's death does not render this appeal academic.
"The aim of civil contempt is to vindicate a party's right to the benefits of a judicial mandate or to compensate that party for the interference by the contemnor" (Matter of Banks v Stanford, 159 AD3d 134, 140; see Matter of McCormick v Axelrod, 59 NY2d 574, 583; Spencer v Spencer, 159 AD3d 174, 177). To support a finding of civil contempt, first, there must be a lawful order of the court in effect clearly expressing an unequivocal mandate. Second, it must appear with reasonable certainty that the order has been disobeyed. Third, the party to be held in contempt must have had knowledge of the court's order. Fourth, the violation of the court's order must be shown to impede, impair, or prejudice the rights of another party (see Matter of McCormick v Axelrod, 59 NY2d at 583, amended on other grounds 60 NY2d 652; Matter of Banks v Stanford, 159 AD3d at 140; see also Judiciary Law § 753[A][3]; El-Dehdan v El-Dehdan, 26 NY3d 19, 29; McCain v Dinkins, 84 NY2d 216, 226). "Once the movant makes the required showing, the burden shifts to the alleged contemnor to refute that showing, or to offer evidence of a defense such as an inability to comply with the order" (Matter of Mendoza-Pautrat v Razdan, 160 AD3d 963, 964; see El-Dehdan v El-Dehdan, 26 NY3d at 35). " A motion to punish a party for civil contempt is addressed to the sound discretion of the court, and the movant bears the burden of proving the contempt by clear and convincing evidence'" (Louzoun v Montalto, 162 AD3d 1004, 1005, quoting Savel v Savel, 153 AD3d 873, 873).
"In New York, the Parole Board holds the power to decide whether to release a sentenced prisoner on parole" (Matter of Silmon v Travis, 95 NY2d 470, 476; see Matter of Hamilton v New York State Div. of Parole, 119 AD3d 1268). The Board's release decisions are discretionary, and if made in accordance with statutory requirements, they are not subject to judicial review (see Executive Law § 259-i[5]; Matter of Banks v Stanford, 159 AD3d at 141; Matter of Wade v Stanford, 148 AD3d 1487, 1488). Judicial review of parole board determinations is narrowly circumscribed (see Matter of Briguglio v New York State Bd. of Parole, 24 NY2d 21, 29; Matter of Marszalek v Stanford, 152 AD3d 773, 773; Matter of Esquilin v New York State Bd. of Parole, 144 AD3d 797, 797). A Board's determination to deny parole release may be set aside only where it evinces "irrationality bordering on impropriety" (Matter of Russo v New York State Bd. of Parole, 50 NY2d 69, 77; see Matter of Banks v Stanford, 159 AD3d at 142).
"Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law" (Executive Law § 259-i[2][c][A]). In making the parole release determination, the Board must consider the relevant statutory factors (see Executive Law § 259-i[2][c][A]). The Board is not required to address each factor in its decision or to give all factors equal weight (see Matter of King v New York State Div. of Parole, 83 NY2d 788, 791; Matter of Coleman v New York State Dept. of Corr. & Community Supervision, 157 AD3d 672; Matter of Gelsomino v New York State Bd. of Parole, 82 AD3d 1097, 1098). However, the Board may not deny an inmate parole based solely on the seriousness of the offense (see Matter of Rossakis v New York State Bd. of Parole, 146 AD3d 22, 27; Matter of Ramirez v Evans, 118 AD3d 707, 707; Matter of Perfetto v Evans, 112 AD3d 640, 641; Matter of Gelsomino v New York State Bd. of Parole, 82 AD3d at 1098).
Here, under the unique facts of this particular case, we agree with the Supreme [*4]Court's exercise of its discretion in granting the petitioner's motion to hold the appellant [FN1] in civil contempt for the Board's failure to comply with the Supreme Court's judgment dated October 2, 2015. In the judgment dated October 2, 2015, the Supreme Court, after concluding, among other things, that the Board's determination to deny parole release was not supported by an application of the factual record to the statutory factors set forth in Executive Law § 259-i, that the Board's determination was based exclusively on the severity of the petitioner's offense, and that there was no rational support in the record for the Board's determination, remitted the matter to the Board "to make a de novo determination on petitioner's request for parole release" to be held before a different panel of the Board.
As previously noted, the Board did not appeal from that judgment. Rather, it purported to comply with the judgment by rendering a new determination following a de novo interview before a different panel and, in its written decision and in the transcript of the interview, purported to comply with its responsibilities to consider the requisite statutory factors. However, the Supreme Court, after conducting an evidentiary hearing, decided that the Board again denied parole release exclusively on the basis of the underlying conviction without giving consideration to the statutory factors. Consequently, the Supreme Court held that a finding of civil contempt was warranted.
Mindful that "[e]very contempt application must be decided on the basis of its own unique facts and circumstances" (Matter of Banks v Stanford, 159 AD3d at 146), we agree with the Supreme Court that a finding of civil contempt was warranted on the facts of this case. Even though the Board purported to comply with its responsibilities to consider the requisite statutory factors, we agree with the Supreme Court's conclusion, made after a hearing, that the record in this particular case demonstrates that the Board again denied parole release exclusively on the basis of the underlying conviction without having given genuine consideration to the statutory factors (see Matter of Coleman v New York State Dept. of Corr. & Community Supervision, 157 AD3d at 673; Matter of Rossakis v New York State Bd. of Parole, 146 AD3d at 27; Matter of Ramirez v Evans, 118 AD3d at 707; Matter of Perfetto v Evans, 112 AD3d at 641).
In all, the petitioner established, by clear and convincing evidence, that the Board was fully aware of the judgment dated October 2, 2015; that the judgment was a lawful and unequivocal mandate of the court; that the Board, by failing to give consideration to the requisite statutory factors set forth in Executive Law § 259-i(2)(c)(A), disobeyed that mandate; and that prejudice to the petitioner resulted. The appellant failed to meet her burden of rebutting the evidence establishing the elements of civil contempt.
We reiterate that our holding is limited to the facts of this particular case. It is not contrary to our determinations in other cases, such as Matter of Banks v Stanford (159 AD3d 134) and Matter of Cassidy v New York State Bd. of Parole (140 AD3d 953). However, the Supreme Court should not have imposed a fine upon the appellant in the amount of $500 per day commencing June 7, 2016, until a new parole interview was held and a decision was issued. "Insofar as civil contempt is concerned, the purpose of a fine is to compensate" (Matter of Department of Hous. Preserv. & Dev. of City of N.Y. v Deka Realty Corp., 208 AD2d 37, 43). "The fines that may be imposed for a civil contempt are found in Judiciary Law § 773. The statute provides for two types of awards: one where actual damage has resulted from the contemptuous act in which case an award sufficient to indemnify the aggrieved party is imposed, and one where the complainant's rights have been prejudiced but an actual loss or injury is incapable of being established" (id. at 43). In the second situation, the fine is limited to $250, plus the complainant's costs and expenses (see Judiciary Law § 773; State of New York v Unique Ideas, 44 NY2d 345, 349; Matter of Department of Hous. Preserv. & Dev. of City of N.Y. v Deka Realty Corp., 208 AD2d at 43). Here, where actual damages were not established, the petitioner may recover reasonable costs and expenses, including attorney's [*5]fees, plus a statutory fine in the sum of $250 (see Matter of Barclays Bank v Hughes, 306 AD2d 406, 408; Glennon v Mayo, 174 AD2d 600, 601; Gordon v Janover, 121 AD2d 599, 600).
Accordingly, the order appealed from is modified, on the law, by deleting the provision thereof imposing a fine upon Tina M. Stanford, Chair of the New York State Parole Board, in the sum of $500 per day commencing June 7, 2016, until a de novo interview is held and a decision is issued in accordance with Executive Law § 259-i(2), and substituting therefor a provision imposing a statutory fine of $250; as so modified, the order is affirmed insofar as appealed from, and the matter is remitted to Supreme Court, Dutchess County, for a determination of the reasonable costs and expenses, including attorney's fees, incurred by the petitioner in the contempt proceedings (see Matter of Barclays Bank v Hughes, 306 AD2d at 406, 408; Glennon v Mayo, 174 AD2d at 601; Gordon v Janover, 121 AD2d at 600-601).
MILLER, DUFFY and BRATHWAITE NELSON, JJ., concur.
ORDERED that the order is modified, on the law, by deleting the provision thereof imposing a fine upon Tina M. Stanford, Chair of the New York State Parole Board, in the sum of $500 per day commencing June 7, 2016, until a de novo interview is held and a decision is issued in accordance with Executive Law § 259-i(2), and substituting therefor a provision imposing a statutory fine of $250; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to Supreme Court, Dutchess County, for a determination of the reasonable costs and expenses, including attorney's fees, incurred by the petitioner in the contempt proceedings.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1:The contempt motion was made in this proceeding pursuant to CPLR article 78 commenced against the appellant, as Chair of the Board. The appellant raises no issue as to whether the civil contempt finding should have been entered against the Board, rather than against its Chair (compare Matter of Banks v Stanford, 159 AD3d 134 [appeal from an order holding the Chair of the Board in civil contempt] with Matter of Cassidy v New York State Bd. of Parole, 140 AD3d 953 [appeal from, inter alia, an amended order holding the Board in civil contempt]).