| |
|---|
| **Green v Towns** |
| 2024 NY Slip Op 31572(U) |
| May 3, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 451786/2023 |
| Judge: Leslie A. Stroth |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| PRESENT: **HON. LESLIE A. STROTH** | PART **12M** |
| *Justice* | |

---------------------------------------------------------------------X

YVETTE GREEN

                                Petitioner,

              - v -

DARRYL C. TOWNS,

                              Respondent.

---------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 451786/2023 |
| MOTION DATE | N/A |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 11, 12, 13, 14, 15, 16, 17, 18, 19

were read on this motion to/for            **ARTICLE 78 (BODY OR OFFICER)**     .

      Petitioner Yvette Green brings this Article 78 proceeding to vacate the July 20, 2022 decision by the New York State Board of Parole ("Board"), denying Ms. Green release on parole, directing a de novo parole hearing, directing that the Board produce all documents that were submitted and considered in petitioner's application for parole, and requiring that the Board either grant parole to Ms. Green, or specify each scale in the Correctional Offender Management Profiling for Alternative Sanctions ("COMPAS")[1] assessment from which it is departing and an individualized reason pursuant to 9 CRR-NY 8002.2(a).

      Judicial review of an administrative determination is limited to whether the determination was made "in violation of lawful procedure, was affected by an error of law or was arbitrary and

---

[1] Pursuant to 9 CRR-NY 8002.2(a), "In making a release determination, the board shall be guided by risk and needs principles, including the inmate's risk and needs scores as generated by a periodically-validated risk assessment instrument... If a board determination, denying release, departs from the department risk and needs assessment's scores, the board shall specify any scale within the department risk and needs assessment from which it departed and provide an individualized reason for such departure. If other risk and need assessments or evaluations are prepared to assist in determining the inmate's treatment, release plan, or risk of reoffending, and such assessments or evaluations are made available for review at the time of the interview, the board may consider these as well."

**451786/2023  GREEN, YVETTE vs. TOWNS, DARRYL C.**                   **Page 1 of 8**
**Motion No.  001**

[* 1]

capricious or an abuse of discretion…" CPLR 7803 (3). In *Matter of Pell v Board of Educ.* (34 NY2d 222, 231 [1974]), the Court of Appeals held that an action is "arbitrary and capricious" when it is "…without sound basis in reason and is generally taken without regard to the facts." Review under Article 78 is unavailable in this Court in the absence of a "final and binding" agency determination (CPLR § 7801 [a]; see e.g. *Matter of Preserve BAMS Historic Dist. Inc. v Landmarks Preserv. Commn. of the City of N.Y.*, 217 AD3d 512 [1st Dept 2023]).

Ms. Green was convicted in 1999 of second-degree depraved indifference murder and is currently serving her sentence for a term of 25-years to life imprisonment at Bedford Hills Correctional Facility. Petitioner was granted early parole consideration and was interviewed by the Parole Board on July 13, 2022. Thereafter, a decision denying her parole was rendered on July 20, 2022 by Parole Commissioners Tana Agostini and Tyece Drake. Petitioner filed an administrative appeal challenging the Board's decision, which was denied on March 14, 2023 by the Board's Appeals Unit. Thus, Ms. Green has exhausted any administrative remedies and this petition shall proceed.

"It is well settled that parole release decisions are discretionary and will not be disturbed so long as the Board complied with the statutory requirements set forth in Executive Law § 259– i. Significantly, the Board is not required to articulate every factor considered in making its decision or to accord each factor equal weight" (*Valentino v. Evans*, 92 A.D.3d 1054 (3rd Dept 2012)). In Ms. Green's case, it is clear that the decision by the Board did not take into account various factors provided under N.Y. Exec. Law § 259-i(2)(c)(A), which specifies factors that may be considered. They include: "(i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interactions with staff and incarcerated individuals; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources,

**451786/2023  GREEN, YVETTE vs. TOWNS, DARRYL C.**
**Motion No.  001**

Page 2 of 8

2 of 8

employment, education and training and support services available to the incarcerated individual . . ." (N.Y. Exec. Law § 259-i (McKinney)).

In its decision, the Board focused on the seriousness of the offense committed by petitioner, describing the details of the conduct of Ms. Green and her boyfriend in the course of committing the subject crime, as well as the singling out of the victim compared with Ms. Green's lack of neglect or abuse of her biological children. In addition, the Board made a finding that petitioner lacked remorse, without providing any details to support this conclusory statement, despite Ms. Green's repeated expressions of remorse during her interview with the Parole Board (Exh B). In fact, during the July 13, 2022 interview, Ms. Green testified to taking full responsibility for the injuries the victim had suffered, stating "Sabrina was a child, okay, and she trusted me, and she didn't deserve this, and I failed her. And my neglect and my reckless behavior took her life, and I am responsible for that" (Exh A, p 8).

At one point during the interview, Commissioner Agostini stated "I looked at your disciplinary record, you have not had a ticket since April of 2019. Your last Tier III was January of 2016 and I don't see any violent conduct, I don't see any weapons, I don't see any drugs so I'm really glad not to see that. . .", but this was not mentioned in the Board's decision (Id at 15-16).

Petitioner also indicated in her interview and in paperwork submitted to the Board that she had obtained her GED and attended college but had to stop due to medical reasons (Id at 16). Furthermore, Ms. Green testified to participating in various voluntary programs, for example, the Linus program, which "entails knitting blankets and hats for babies in neonatal units and for veterans with serious medical conditions" (Id at 18 & Exh D, p 6). The transcript from the hearing clearly demonstrates petitioner's program accomplishments, educational achievements, and post release plans, which the Board then failed to address in its determination (See *Vigliotti v. State Exec. Div. of Parole*, 98 A.D.3d 789 (3rd Dept 2012)).

**451786/2023  GREEN, YVETTE vs. TOWNS, DARRYL C.**
**Motion No. 001**

**Page 3 of 8**

3 of 8

[* 3]

Notably, Commissioner Agosotini described Ms. Green's release goals as follows during the interview: "You say upon release my main goal is to continue my education, but I'm also striving to start a food truck, and you plan to work with women in your community who have found themselves in similar situations. I have the packet here from the Parole Preparation Project, they write a nice analysis, they shorted you three years, they said you've only been in 22, you and I both know it's 25, they don't let you go to the board at 22 when it's 25, but they talk about your religious faith, that you have become more religious as the years have progressed, that you have a congregation of Jehovah's Witnesses in Queens who are ready, able, and excited to help you in the community" (Id at 20). However, none of these such recognitions were mentioned in the Board's decision in denying parole to petitioner.

"While the Parole Board need not expressly discuss each of these factors in its determination, it must, by law, inform the inmate in writing of the factors and reasons for denial of parole, and [s]uch reasons shall be given in detail and not in conclusory terms" (*Mitchell v. New York State Div. of Parole*, 58 A.D.3d 742 (2d 2009)). As the Court held in *Mitchell*, "While the seriousness of the underlying offense remains acutely relevant in determining whether the petitioner should be released on parole, the record supports the petitioner's contention that the Parole Board failed to take other relevant statutory factors into account" (Id). The same appears to be true here. During her interview, Ms. Green stated that she was "Certainly looking to parole to the community. Help other victims of domestic violence. Work on positive peer support, Positive influences, you know, certainly in the facility, and joining an organization within Bedford Hills that promotes positivity like Rehabilitation through the Arts, yoga, those are certainly good programs" (Exh A, p 19). She has also participated in institutional programs, such as Down on Violence Program, Anger in You, and Family Violence, with her favorite being

**451786/2023  GREEN, YVETTE vs. TOWNS, DARRYL C.**
**Motion No. 001**

**Page 4 of 8**

Family Violence (Id at 17). Yet, the Parole Board made no mention of these positive factors in its decision.

As to the COMPAS risk assessment, the Board acknowledged in its decision that petitioner's "assessment reflects low risk and low need scores," but added "… which this panel departs from, particularly felony violence, arrest and criminal involvement", without any explanation as to the reason for its departure (Exh B). The very rules that are to be considered by the Board state that, "In making a release determination, the Board shall be guided by risk and needs principles, including the inmate's risk and needs scores as generated by a periodically-validated risk assessment instrument. . ." (N.Y. Comp. Codes R. & Regs. tit. 9, § 8002.2). Pursuant to 9 NYCRR § 8002.2(a), "If a Board determination, denying release, departs from the Department Risk and Needs Assessment's scores, the Board shall specify any scale within the Department Risk and Needs Assessment from which it departed and provide an individualized reason for such departure. If other risk and need assessments or evaluations are prepared to assist in determining the inmate's treatment, release plan, or risk of reoffending, and such assessments or evaluations are made available for review at the time of the interview, the Board may consider these as well" (N.Y. Comp. Codes R. & Regs. tit. 9, § 8002.2).

The Court is not persuaded by the Board's argument that its departure from the COMPAS risk assessment is due to its concerns about petitioner's lack of judgment, compassion, and ability to single out one child for abuse and neglect as it failed to "specify any scale" within the assessment, as well as an "individualized" reasoning, relying solely on the seriousness of petitioner's offense. Of note, Commissioner Agostini recognized Ms. Green's assessment - - "I have your COMPAS Risk Assessment here. I have a number of low risk, low needs scores here, and so I'm glad to see that" (Exh A, p 18). According to the Risk Assessment, Criminogenic Needs Bar Chart, Ms. Green's "Criminal Involvement," "History of Violence," and "Prison

**451786/2023  GREEN, YVETTE vs. TOWNS, DARRYL C.**
Motion No. 001

**Page 5 of 8**

5 of 8

Misconduct" scored "Low" (Exh D, p 37). In fact, a notation was provided that there was "no potential faking concern" (Id at p 44). There is absolutely no reference in the report to any conduct by Ms. Green on which the Board relied in its departure from the COMPAS scores.

The First Department has held that, "The Board may not deny parole based solely on the seriousness of the offense" (*Rossakis v. New York State Bd. of Parole*, 146 AD3d 22 (1st Dept 2016). In Ms. Green's case, the Board did exactly that. The Board did not acknowledge Ms. Green's individual circumstance at all, such as that petitioner was the oldest of 12 children and "took care of her siblings from the age of nine and received little care from adults around her. Her mother struggled with addiction and her stepfather frequently used beatings as a way to enforce discipline" (Exh D, p 3). She had ten children of her own at the time of her offense and demonstrated a history of domestic violence by her boyfriend Darryl Stephens[2], as well as her fear of losing Sabrina and her children, which played into decision-making relating to Sabrina, particularly the lack of medical care at the end of her life (Verified Petition and Exh A, p 13).

The Court does not disagree that the crime for which Ms. Green has been in prison these many years was horrific and heart-breaking. However, Ms. Green has served her time and is committed to making positive contributions to both her family and society. To keep her in prison any longer does not appear to this Court to serve any useful purpose. As Ms. Green herself has stated, she will continue to be reminded throughout her life that her sister Sabrina's life was cut short due to her failure to protect and care for her when she was the only one who could. Staying behind bars beyond the 25 years she has served will not make this realization, or her remorse, any greater than it obviously already is.

---

[2] Mr. Stephens was also convicted of second-degree depraved indifference murder and sentenced to 25 years to life and his actions directly caused the injuries leading to Sabrina's death. Significantly, respondent informed the Court on February 20, 2024 that Mr. Stephens was granted parole and released in August 2023.

**451786/2023 GREEN, YVETTE vs. TOWNS, DARRYL C.**
**Motion No. 001**

**Page 6 of 8**

Finally, regarding Ms. Green's Release Plan, petitioner submitted correspondence from the Center for Employment Opportunities, College & Community Fellowship, and Better Life Christian Church NY, that expressed support for Ms. Green in advancing her education and career (Exh D, p 15-24). Ms. Green's working skills, ranging from food service to clerical functions is supported by her application, which can all be valuable toward obtaining employment upon her release.

The Court further notes that Ms. Green has the assistance of her congregation of Jehovah's Witnesses to promote her future ambitions. Margaret Warner, a Jehovah's Witnesses member, expressed that "[o]ver the ten years that I have known her, her reading has greatly improved. She has stopped smoking, cleaned up her language and has learned to process and express her emotions in a healthy manner. She has done all of this despite her surroundings" (Exh D, p 30). Again, the Board clearly did not consider this nor any other mitigating factors for Ms. Green's release.

Perhaps most significantly, Ms. Green has her children's support upon release, as she will be residing with her son in Far Rockaway, Queens (Id at 7). The Court considers the following letter provided by Tyrone Green, the eldest of Ms. Green's children, "Yvette Green has been a great mother to me and my siblings and even some of her own siblings while growing up. Deep down inside, all the people that she helped or housed over the years know that a mistake happened but my mom was always the giver and supporter for people that needed it" (Id at p10). Joshua Stephens, another son of Ms. Green's, wrote that "My mother has my full support along with the support of her brothers, sisters, children and grandchildren" (Id at p 13).

The Board has failed to take into account the above and many positive factors submitted with petitioner's application, as well as her demonstrably sincere testimony. For all of the foregoing reasons, the Court finds that the Board's decision was arbitrary and capricious and

**451786/2023  GREEN, YVETTE vs. TOWNS, DARRYL C.**
**Motion No. 001**

**Page 7 of 8**

[* 7]

lacks any justification to support its ultimate finding. Therefore, it must be set aside. Petitioner is entitled to a *de novo* hearing. The Board shall reconsider the factors provided under N.Y. Exec. Law § 259-i(2)(c)(A) throughout the new hearing, as well as the many positive factors outlined herein.

\*   \*   \*

Based upon the foregoing and the papers submitted, it is hereby

ORDERED, that petitioner's motion is granted, the Board's July 22 decision is set aside, and a de novo parole hearing is ordered. The Board shall either grant parole to Ms. Green or specify all factors relied upon by the Board in its denial and specify each scale in the COMPAS assessment from which it is departing and an individualized reason under 9 CRR-NY 8002.2(a); and it is further

ORDERED, that petitioner's request for the production of all documents by respondent is granted, as the Parole Board's decision to ignore the positive factors submitted by Ms. Green in support of this petition leads to this Court's determination that all information considered by the Parole Board must be disclosed.

The foregoing constitutes the Decision and Order of the Court.

ENTER,

HON. LESLIE A. STROTH
J.S.C.

Dated:   May 3, 2024

| CHECK ONE: | X | CASE DISPOSED | | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**451786/2023   GREEN, YVETTE vs. TOWNS, DARRYL C.**
**Motion No.  001**

Page 8 of 8

[* 8]

8 of 8